### COMMONWEALTH vs. RICHARD L. BALTHAZAR.

Norfolk.    September 16, 1974. — November 1, 1974.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Constitutional Law,* Due process of law. *Statute,* Validity. *Unnatural and Lascivious Act. Practice, Criminal,* Argument by prosecutor. *Error,* Whether error harmful.

The prohibition of G. L. c. 272, § 35, against the commission of an "unnatural and lascivious act" is not unconstitutionally vague. [300-302]

General Laws c. 272, § 35, must now be construed as inapplicable to private, consensual conduct of adults. [301-302]

Where a defendant charged with the commission of an "unnatural and lascivious act" with another person failed to file a request that the issue of the victim's consent be submitted to the jury, and failed to object or except to the judge's charge in this respect, the defendant was barred from raising on appeal the absence of a charge on the subject of consent. [302-303]

Where, at the trial of an indictment for violation of G. L. c. 272, § 35, there was testimony by a woman that the defendant forced her to engage in oral contacts with certain portions of his body, a charge by the judge that the jury would be "warranted in finding that such acts [if committed] were unnatural and lascivious within the meaning of the statute" was not objectionable as failing to give the jury a sufficient standard for their guidance. [303]

A statement, made by the prosecutor in his argument to the jury at a criminal trial, which might have been construed as improper comment on failure of the defendant to testify to contradict the testimony of the principal witness for the Commonwealth was not prejudicial where the defendant promptly objected and the judge promptly and thoroughly protected the defendant's interests by comments to the prosecutor and to the jury. [303-304]

INDICTMENT found and returned in the Superior Court on September 29, 1972.

The case was tried before *Lynch,* J.

*Malvine Nathanson* (*Bruce R. Bono* with her) for the Commonwealth.

*John P. Connor, Jr.,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant was convicted of committing an "unnatural and lascivious act with another person." See G. L. c. 272, § 35. He argues that the prohibition against committing an "unnatural and lascivious act" is unconstitutionally vague. He further asserts that § 35 is unconstitutional because it impermissibly attempts to apply to conduct of consenting adults in private. He argues that the judge should have instructed the jury that consent by the victim would bar a conviction under § 35. He also claims that, if § 35 is free from unconstitutional vagueness, the judge failed to give the jury an adequate description of what constitutes an unnatural and lascivious act. He finally argues that an improper remark in the prosecutor's closing argument to the jury was not adequately cured by the judge.

The victim testified that she was standing on the sidewalk at Exeter Street in Boston one day in July, 1972, when a light blue car pulled up. Because she thought the car was that of a friend, she entered it. She testified that when she discovered that the driver was not her friend, she tried to leave the car, but the defendant pulled a knife and said, "You're not going anywhere." She testified that he then drove her to a secluded place south of Boston. He threatened her and ordered her to take off her blouse and pants. He then ordered her to commit an act of fellatio on him, threatening to kill her if she did not. She did as he ordered. He then ordered the victim "to put . . . [her] tongue on his backside." She complied. The victim testified that the defendant drove her back to Boston and let her go. Subsequently he was apprehended at a time and place where the victim said she had agreed to meet him on the following Saturday. The defendant did not testify. There were no other witnesses to the alleged crimes.

The jury found the defendant guilty of committing an

unnatural and lascivious act but found him not guilty of assault with a dangerous weapon.

1. The defendant first argues that § 35 is void on its face as a violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States and art. 12 of the Declaration of Rights of the Constitution of the Commonwealth. See *Commonwealth* v. *Carpenter,* 325 Mass. 519, 521 (1950). He asserts that the words "unnatural and lascivious" fail to state with sufficient particularity what conduct is made criminal. We agree that today these words, standing alone, present some question as to their meaning, even if they had a generally understood signification in 1887 when they were first expressed in the statute from which § 35 is derived. St. 1887, c. 436, § 1. In some other jurisdictions, statutes utilizing language of this general character have been struck down on due process grounds. See, e.g., *State* v. *Sharpe,* 1 Ohio App. 2d 425 (1965) ("unnatural sex act"); *Harris* v. *State,* 457 P. 2d 638 (Alaska, 1969) ("crime against nature"); *Franklin* v. *State,* 257 So. 2d 21 (Fla. 1971) ("abominable and detestable crime against nature").[1]

However, judicial construction of an otherwise ambiguous statute may fulfil the constitutional requirement of specificity. *Alegata* v. *Commonwealth,* 353 Mass. 287, 303-304 (1967). *Miller* v. *California,* 413 U. S. 15 (1973). Furthermore, a sufficiently definite warning may be achieved by the common law meaning or statutory history of particular terms. See *Commonwealth* v. *Brasher,* 359 Mass. 550, 553 (1971), and cases cited. Constitutional adequacy is thus attained when the language proscribing certain conduct is "measured by common understanding and practices." *Commonwealth* v. *Jarrett,* 359 Mass. 491, 496-497 (1971).

In 1954, this court held that § 35 had sufficient clarity to be free from unconstitutional vagueness. *Jaquith* v. *Com-*

---

[1] Legislative attention to our inexplicit statutes in this area seems desirable in order to avoid further claims of uncertainty as to what conduct is interdicted.

monwealth, 331 Mass. 439, 442 (1954). We said (at 442) that
the words "an unnatural and lascivious act" are "words of
common usage and indicate with reasonable clarity the
kind and character of conduct which the Legislature
intended to prohibit and punish." We stated that "[t]hese
words have a well defined, well understood, and generally
accepted meaning." We then defined these words as sig-
nifying "irregular indulgence in sexual behavior, illicit
sexual relations, and infamous conduct which is lustful,
obscene, and in deviation of accepted customs and man-
ners." We said (at 443) that "the common sense of the
community, as well as the sense of decency, propriety, and
morality which all respectable persons usually entertain, is
sufficient to apply the statute to a situation and determine
what particular kind of conduct offends." We concluded (at
443) that specification in the indictment beyond the
language of the statute (see G. L. c. 277, § 45) "would be an
offence against common decency."

We thus have limited the scope of § 35 to sexual conduct
which virtually all members of the community have re-
garded as offensive. This is, of course, a standard which
may change with the passage of time. In the years since the
*Jaquith* case, a new factor has appeared with the arti-
culation of the constitutional right of an individual to be
free from government regulation of certain sex-related
activities.[2] First Amendment rights of free speech now
permit even a patently offensive portrayal of sexual con-
duct in a work which has some "serious literary, artistic,

---

[2] See *Griswold* v. *Connecticut,* 381 U. S. 479 (1965) (the right of married couples
to use contraceptives); *Stanley* v. *Georgia,* 394 U. S. 557 (1969) (the right to
possess obscene materials privately); *Eisenstadt* v. *Baird,* 405 U. S. 438 (1972)
(the right of single persons to obtain contraceptives); *Roe* v. *Wade,* 410 U. S. 113
(1973) (a woman's right to terminate her pregnancy before the fetus attains
viability). See also *California* v. *LaRue,* 409 U. S. 109, 132, n. 10 (1972) (Marshall,
J., dissenting) (questioning the existence of a State interest in regulating any
sexual act between consenting adults); *Cotner* v. *Henry,* 394 F. 2d 873, 875 (7th
Cir. 1968), cert. den. 393 U. S. 847 (1968) (private consensual marital relations
said to be protected from regulation by State criminal law); *Buchanan* v.
*Batchelor,* 308 F. Supp. 729 (N. D. Texas, 1970), vacated and remanded for
reconsideration on jurisdictional grounds sub nom. *Wade* v. *Buchanan,* 401 U. S.
989 (1971) (the right of married couples to practice consensual "sodomy" in
private); *Lovisi* v. *Slayton,* 363 F. Supp. 620, 624-625 (E. D. Va. 1973) (the right of
privacy extends to intimate sexual relations among consenting adults in private).

political, or scientific value." See *Miller* v. *California,* 413 U. S. 15, 24 (1973).

In light of these changes and in light of our own awareness that community values on the subject of permissible sexual conduct no longer are as monolithic as the *Jaquith* case suggested they were in 1954, we conclude that § 35 must be construed to be inapplicable to private, consensual conduct of adults. We do so on the ground that the concept of general community disapproval of specific sexual conduct, which is inherent in § 35, requires such an interpretation. We do not decide whether a statute which explicitly prohibits specific sexual conduct, even if consensual and private, would be constitutionally infirm.

As thus construed, § 35 clearly may apply to the noncon-sensual conduct in which the defendant forced the victim to engage. In *Commonwealth* v. *Deschamps,* 1 Mass. App. Ct. 1, 4-5 (1972), the Appeals Court concluded that § 35 applied to a defendant who forced another to commit an act of fellatio and submit to an act of cunnilingus. Without undertaking to consider acts not involved in this case, we conclude that there is no unconstitutional vagueness in § 35 as applied to the defendant. The defendant may not properly rely on the possible unconstitutionality of § 35 as applied to others. *Commonwealth* v. *LaBella,* 364 Mass. 550, 553-554 (1974).

2. We turn next to the defendant's argument concerning the consent of the victim. What we have said already indicates that consensual conduct in private between adults is not prohibited by § 35. Assuming that the acts here in question occurred in private and that the victim was an adult,[3] on request or objection the judge should have submitted the issue of consent to the jury. However, the defendant did not file such a request, nor did he take an exception (or even raise any objection) to the judge's charge

---

[3] Her testimony indicates that she was twenty-one at the time of the alleged offense.

in this respect. Although the matter of the statute's "overbreadth" was raised in a motion to dismiss the indictment, the defendant did not press further the subject of consent, once the evidence was presented to the jury. The defendant may not object here for the first time to the absence of a charge on the subject of consent. *Commonwealth* v. *LaBella,* 364 Mass. 550, 554 (1974).[4]

3. The defendant contends that, if § 35 is not impermissibly vague, the judge failed to give the jury any standards for determining whether the acts described by the complaining witness were "unnatural and lascivious."

The judge charged the jury that, if they believed the testimony of the victim, they would be warranted in finding that the defendant committed an unnatural and lascivious act upon her. The judge stated that he "need not go further in this particular case to define the nature of such acts." He added that "[i]f you believe that those acts did occur, then you would be warranted in finding that such acts were unnatural and lascivious acts within the meaning of the statute."

We believe that this charge was at least as favorable to the defendant as was necessary. By compelling the victim to put her mouth on his genitals and on his buttocks or anus, the defendant sought sexual gratification in a manner which deviated from accepted conduct in the community. These *nonconsensual* acts are by general agreement both unnatural and lascivious. Thus, if the jury found that these acts did occur under threats by the defendant, a finding of guilt was indicated, and there was no occasion for the jury to exercise independent judgment as to whether the acts were "unnatural and lascivious."

4. The defendant asserts finally that the judge failed to

---

[4] The evidence did not raise any significant factual dispute concerning consent. The defendant did not testify. His defense was based on a claim of mistaken identity. The defendant presented medical testimony tending to show that, due to an operation, he was incapable of using his right arm in certain ways as testified by the victim. The fact that the jury acquitted the defendant of assault with a deadly weapon does not require the conclusion that the victim consented to perform the acts in question. There was evidence of threats of force, apart from her apparently disbelieved testimony regarding the defendant's threats with a knife.

cure prejudice arising from the prosecutor's improper argument to the jury that certain testimony of the victim had not been denied. The prosecutor's statement, which is set forth in the margin,[5] could be construed as a comment on the defendant's failure to testify and hence as a violation of rights protected by the Fifth Amendment to the Constitution of the United States, art. 12 of the Declaration of Rights, and G. L. c. 233, § 20, Third. The Commonwealth concedes that the challenged remarks "go beyond the purpose of a closing argument," but argues that any possible prejudice was obviated by the judge's instructions to the jury.

Defense counsel objected immediately to the inappropriate remark. The judge forthwith instructed the prosecutor to "move off that particular point" and told the jury that it was "not up to the defendant to put on any evidence" and that it was "completely up to the Commonwealth to prove its case beyond a reasonable doubt." He repeated these points in his charge, alluding to what he had said previously. After the charge, defense counsel objected to the judge's failure to instruct specially as to the prosecutor's statement, claiming that the judge had failed to cure the prejudice. When the judge asked defense counsel to suggest "in any form of words what more I can say to the jury," defense counsel was unable to offer any suggestion. The judge promptly and thoroughly protected the defendant's interests in this respect. There was no prejudicial error. *Commonwealth* v. *Festo,* 251 Mass. 275, 281-282 (1925). *Commonwealth* v. *Domanski,* 332 Mass. 66, 69 (1954). See *Commonwealth* v. *Balakin,* 356 Mass. 547, 553 (1969).

*Judgment affirmed.*

---

[5] "We may have non-corroboration but we do not have denial as to the basic facts of this case, two basic facts, one, the knifepoint and threat and, two, an unnatural act. Those two facts have not been denied in this trial."