## COMMONWEALTH *vs.* MORRIS MORGAN.

Suffolk.    October 6, 1975. — December 23, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Jury and Jurors.   Practice, Criminal,* Empanelling of jury, Fair trial,
Mistrial.   *Error,* Whether error harmful.   *Evidence,* Impeachment
of witness.

A defendant convicted of a sex crime, who showed no prejudice from
the excuse of a woman from jury service pursuant to G. L. c. 234,
§ 1A, upon her representation and a judicial determination that
she would be likely to be embarrassed by hearing the testimony or
by discussing it in the jury room, was not denied his constitutional
right to a jury drawn from a fair cross section of the community
[333-336]; nor was the defendant denied equal protection of the
law because he was tried by a jury of a different composition from
that which would have tried a defendant not charged with a sex-
related crime [336-337].

There was no abuse of discretion, or reversible error in the denial of a
motion for a mistrial in a sex case by reason of the prosecutor's
questions to the defendant on cross-examination concerning his
failure to report to police, at a time when he was under arrest and
had no duty to speak, an alleged attempted theft by the victim,
where the questions were directed to the defendant's credibility
and the trial judge immediately gave instructions to the jury which
included a direction to disregard the questions, a reprimand to the
prosecutor, and a clear explanation of why the questions were im-
proper; the trivial nature of the trial incident rendered constitu-
tional error harmless beyond a reasonable doubt.   [338-344]

A defendant in a criminal case who stated that he was content with
the judge's charge and took no exception thereto was not entitled
to object in this court for the first time to the charge as given.
[344]

THREE INDICTMENTS found and returned in the Superior
Court on May 8, 1974.

The cases were tried before *Cross,* J.

After review was sought in the Appeals Court, the
Supreme Judicial Court, on its own initiative, ordered
direct appellate review.

*Robert S. Potters* for the defendant.

*Timothy P. O'Neill,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant, who was convicted of rape, engaging in an unnatural and lascivious act, and assault and battery, argues four assignments of error. The circumstances relating to each assignment are set forth as we deal with it. There was no error.

1. The defendant's first contention is that he was denied his constitutional right to a fair trial and to equal protection of the laws because the trial judge excused a woman juror pursuant to G. L. c. 234, § 1A. Over the defendant's objection and exception, the judge advised each potential woman juror that she could be excused if she would be embarrassed by hearing the testimony or discussing it in the jury room. One woman chose to be excluded; one woman did not.

The judge believed that he was obliged to bring to the attention of women jurors their option of withdrawing if they would be embarrassed to serve. Section 1A of G. L. c. 234, inserted by St. 1949, c. 347, § 2, provides in part that "[n]o woman shall be required to serve in the trial of any prosecutions . . . [of certain sex crimes and obscenity cases] if, upon her representation it appears to the presiding justice that she would be likely to be embarrassed by hearing the testimony or by discussing the same in the jury room."

The defendant argues that the exclusion of one woman juror because the judge concluded that she might be embarrassed denied him his constitutional right to a jury drawn from a fair cross section of the community. He argues further that he was denied equal protection of the laws because the persons who constituted the jury were not selected in the same manner as they would have been for a defendant who was not charged with a sex crime.[1]

---

[1] The transcript contains no discussion between the judge and the woman who asked to be excused. It does have the judge's reference

The defendant was not denied his constitutional right to a jury drawn from a fair cross section of the community because one woman was excused from the jury pursuant to the provisions of § 1A. Section 1A does not provide for an automatic exemption for all women, as was the case in *Taylor* v. *Louisiana*, 419 U.S. 522 (1975). Indeed, the opinion in the *Taylor* case recognizes that States "remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists or panels are representative of the community." *Id.* at 538.[2]

Reasonable individual exemptions, which do not result in significant underrepresentation of a class in the group from which petit juries are chosen, are recognized as acceptable in the *Taylor* case. *Id.* at 534, 538. We believe that the exclusion of a woman pursuant to the

---

to the subject of the statute made "to the ladies on the jury" and a conference at the bench with the woman who elected to serve. The defendant does not object to the judge's interpretation of the statute or his treatment of the subject except on constitutional grounds. Therefore, this case is unlike *Commonwealth* v. *McKay*, 363 Mass. 220 (1973), where no constitutional challenge was raised to the dismissal of a potential woman juror but the judge's treatment of the subject was claimed to be an abuse of discretion.

The judge's references to the statute as one "passed a long time ago" and as an "old statute" suggest that he did not intend to encourage women to withdraw as jurors.

[2] The *Taylor* case involved the makeup of the venire. Section 1A does not concern the makeup of the venire, but applies to a woman who has been selected from the venire to serve on a particular jury. For the purposes of the constitutional analysis involved here, we accept the defendant's argument that the two situations are the same. However, there is no requirement that the petit jury, as opposed to the pool from which it is selected, "mirror the community and reflect the various distinctive groups in the population." *Taylor* v. *Louisiana, supra* at 538.

The present case was tried before the decision in *Taylor* v. *Louisiana, supra.* The defendant recognizes that the principle of the *Taylor* case is not retroactive (*Daniel* v. *Louisiana,* 420 U.S. 31 [1975]), but argues that our decisions have long recognized a similar principle in this Commonwealth.

provisions of § 1A is such a reasonable exemption. Not only does the exemption not apply to all women, but also it applies only when a woman represents that she would be likely to be embarrassed by hearing the evidence or discussing it and the judge determines that her representation is correct. Embarrassed women do not constitute a significant class in society whose exclusion from jury service raises a constitutional question. Cf. *Commonwealth* v. *McKay*, 363 Mass. 220, 224 (1973). Because the operation of § 1A does not exclude a class of persons, it does not deny a defendant a jury made up of a fair cross section of the community. For similar considerations, not involving any constitutional question, compare *Searle* v. *Roman Catholic Bishop of Springfield*, 203 Mass. 493 (1909) (where persons excluded from the petit jury constituted an identifiable class), with *Commonwealth* v. *Gilday*, 367 Mass. 474, 494 (1975), and *Commonwealth* v. *McKay*, 363 Mass. 220, 224 (1973) (where persons so excluded were not members of an identifiable class). We add that the defendant has not shown, as he must, that he sustained any prejudice by the application of § 1A in his case. See *Brunson* v. *Commonwealth*, *ante*, 106 (1975).

Because the operation of § 1A does not infringe on the defendant's constitutional right to a fair trial, we do not have to reach the question whether § 1A might be sustained because the Commonwealth has a valid ground for impinging on the defendant's constitutional right.[3] We note that, if the defendant's argument were to prevail

---

[3] Persons who are incapable of performing the tasks of jurors fairly and well have to be excluded from any jury service. See 28 U.S.C. § 1865(b) (1970), as amended, 28 U.S.C. § 1865(b) (Supp. II, 1972), which requires that a juror have a minimum ability to speak, read, write, and understand English and have no mental or physical infirmity. It could be argued that a person who would be so squeamish about the subject matter of any alleged sex crime as to want to withdraw from the jury has a disability different only in degree from the disability of a person who cannot understand or speak the English language. Indeed, analyzed from the viewpoint of a defendant

as to all sex-related crimes, a criminal defendant would have a constitutional right, for example, to compel a non-consenting and objecting person to view an obscene motion picture. We doubt that the Federal Constitution says that a defendant would be denied a jury drawn from a fair cross section of the community unless such a juror is forced to serve. Certainly the Supreme Court of the United States has not yet said that it does, and we are confident that the Constitution of the Commonwealth does not.

We come then to the defendant's claim that he was denied equal protection of the laws because he was tried by a jury of a different composition than would have tried a defendant not charged with a sex-related crime. We have no difficulty in accepting a statutory pattern which provides a mechanism for exemption of a juror, who would be embarrassed, only where the trial involves a sex-related crime. Such a classification is decidedly rational. The evidence in sex-related criminal prosecutions obviously is more apt to be the source of embarrassment than the evidence in prosecutions not relating to sexual conduct.

Although the defendant expresses his argument under a heading of discrimination between defendants, his major contention is voiced in opposition to the statutory distinction between men and women. He argues that there is no rational basis to assume women are more apt to be embarrassed by hearing sex-related cases than men. He adds that, even if women are more apt to be embarrassed, there is no compelling State interest which can justify the discrimination in the face of an equal protection challenge. It is far from clear that the defendant may raise this objection to the sex-based discrimination

---

charged with sex crimes, but acknowledging his constitutional right to argue the point (*Taylor* v. *Louisiana, supra* at 526), it is difficult to imagine that service by a squeamish juror would enhance such a defendant's chances of a favorable verdict.

appearing in § 1A. He is not objecting that embarrassed men may have been allowed to serve as jurors. He claims rather that no embarrassed woman should have been excused. But the more rational cure for any constitutionally unacceptable sex-based discrimination in § 1A might be found in extending its provisions to men rather than denying them to women (see authorities cited in *House* v. *House,* 368 Mass. 120, 122-123 [1975]), and the defendant did not make such a request of the judge.

In any event, the defendant has not been discriminated against in violation of his right to equal protection of the laws. As we have said, the defendant was not denied a jury drawn from a representative venire and is situated rationally in a class different from criminal defendants not charged with sex-related crimes. Section 1A, with its expressed sex-based distinction or without it, applies equally to all persons in the defendant's classification. Thus he is not entitled to a "strict scrutiny-compelling state interest" equal protection analysis. See *Reed* v. *Reed,* 404 U.S. 71, 75-76 (1971).[4]

In the future, when the question of a juror's embarrassment is involved under § 1A, we suggest that the judge question the prospective juror in the absence of the jury and make a statement of the findings or other basis for his decision to excuse or not to excuse the prospective juror.

---

[4] Section 1A is not without its minor classification problems, although none is of such a character that the defendant may derive any benefit from it. See *Amado* v. *Superintendent, Mass. Correctional Institution at Walpole,* 366 Mass. 45, 50 (1974). It is operative as to some crimes where juror embarrassment may be minimal or nonexistent. See, e.g., G. L. c. 272, § 15 (polygamy); G. L. c. 272, § 22 (concealing the death of an illegitimate child); G. L. c. 272, § 33 (exhibiting an albino person or certain deformed or apparently deformed persons for hire). On the other hand, § 1A does not apply (except by implication) to two sex-related crimes created since its enactment: (1) the crime of assault to commit rape on a female child under the age of sixteen (G. L. c. 265, § 24B, inserted by St. 1955, c. 763, § 3) and (2) the crime of committing an unnatural and lascivious act with a child under the age of sixteen (G. L. c. 272, § 35A, inserted by St. 1955, c. 763, § 4).

2. The defendant's second contention is that he was prejudiced because the prosecutor cross-examined him concerning his failure to make a particular statement to the police at a time when he was under arrest and thus had no duty to speak. We think that any prejudice was insubstantial and was rendered harmless beyond any reasonable doubt by the judge's prompt instruction to the jury. Thus the judge's denial of the defendant's motion for a mistrial was correct.

The problem arose in this way. On direct examination, the defendant testified that the complainant tried to steal his television set from his apartment where the alleged crimes occurred and that he woke up and stopped her. On cross-examination, twice without objection, the prosecutor asked the defendant whether he had reported the attempted theft to the police. He said, "No." The prosecutor then pressed the point, asking whether the defendant had told the arresting police officer of the attempted theft. An analysis of the prosecutor's questioning, of the defendant's objections, and of the judge's immediate instruction to the jury, which are set forth in the margin,[5] shows a prompt reprimand and a clear explanation of why the line of questioning was not proper, as applied to a time when the defendant was

---

[5] THE PROSECUTOR: "Did you when this was over, did you report this to the police?"

THE DEFENDANT: "No."

THE PROSECUTOR: "Did you make any attempt to communicate this information to the police?"

THE DEFENDANT: "No."

THE PROSECUTOR: "Did you tell Detective Rufo when he came for you?"

THE DEFENDANT: "No."

THE PROSECUTOR: "Did you mention anything about that to him?"

THE DEFENDANT: "No."

under arrest.[6]   The defendant neither objected to the instruction nor requested additional instructions.

Cases of this character require a consideration of the possibility of continuing prejudice in light of the apparent force and effect of the judge's response.   See *Commonwealth* v. *Eagan*, 357 Mass. 585, 592 (1970) (curative instructions concerning police testimony that the defendant chose to remain silent on questioning by the police); *Commonwealth* v. *Domanski*, 332 Mass. 66, 69 (1954)

---

COUNSEL FOR THE DEFENDANT:   "I object."

THE JUDGE:   "Sustained."

THE PROSECUTOR:   "Did you mention to anyone, to any one of the police that you happened to see —"

COUNSEL FOR THE DEFENDANT:   "I object.   May I approach the bench."

THE JUDGE:   "Yes."

At the bench:   COUNSEL FOR THE DEFENDANT:   "Your Honor, may it please the Court, I am going to move for a mistrial — he has three times entered that area after objection."

THE JUDGE:   "What do you say?"

THE PROSECUTOR:   "Your Honor, I merely asked that since he is claiming the woman was a prostitute and committing a crime, did he report that to the police."

THE JUDGE:   "I will sustain the objection."

COUNSEL FOR THE DEFENDANT:   "Exception."

THE JUDGE:   "I would keep away from that, because it's a very fine line.   He was under no obligation to say anything."

THE PROSECUTOR:   "I know that."

In open court:   THE JUDGE:   "I should tell the jury that when the defendant was arrested, one of the rights that he has is the right to remain silent.   He is under no obligation to speak to the police. And, therefore, the question:   Did you tell the police this or that — that is really not proper.   And I will ask you to exclude it from your mind.   He was under no duty to tell the police anything."

---

[6] Although the defendant argues that the prosecutor's questioning dealt as well with the defendant's failure to tell the arresting officer that the complainant consented to the various acts, we do not so interpret the questioning.

(curative instructions following prosecutorial argument concerning the defendant's failure to take the stand). In weighing any prejudice, we note that the cross-examination did not deal directly with the subject of the defendant's guilt but with the collateral question, still important to be sure, of his credibility. The record does not support the defendant's claim that the prosecutor engaged in repeated questioning over repeated, valid objections, sustained by the judge, or that the prosecutor intentionally infringed the defendant's constitutional rights.

Cases in the Federal courts also have involved a weighing of the alleged harm in light of all the circumstances. For purposes of our weighing of the alleged harm in this case, we start by accepting the defendant's contention that, standing alone, the questioning amounted to constitutional error. See *United States* v. *Anderson,* 498 F.2d 1038 (D.C. Cir. 1974), aff'd on other grounds sub nom. *United States* v. *Hale,* 422 U.S. 171 (1975), which is discussed subsequently in this opinion. See also, however, *United States* v. *Fairchild,* 505 F.2d 1378, 1382 (5th Cir. 1975), which indicates that a defendant's custodial silence may be used to impeach him in certain circumstances. One factor in the weighing process is "the psychological advantage of immediate correction" by the judge's instructions. *Holden* v. *United States,* 388 F.2d 240, 242 (1st Cir.), cert. denied, 393 U.S. 864 (1968). Another factor is that the error was "addressed to credibility rather than substance." *Haberstroh* v. *Montanye,* 493 F.2d 483, 485 (2d Cir. 1974). Both of those mitigating elements are present here.

Assuming constitutional error in the questioning, the issue is whether the error was harmless beyond any reasonable doubt "on our own reading of the record and on what seems to us to have been the probable impact of . . . [the improper questioning] on the minds of an average jury." *Harrington* v. *California,* 395 U.S. 250, 254 (1969). The insignificance of an error can justify a conclusion that the error was harmless beyond a reason-

able doubt. See *Schneble* v. *Florida,* 405 U.S. 427, 430-431 (1972). See also *United States* v. *Celcer,* 500 F.2d 345, 347 (5th Cir. 1974), cert. denied, 421 U.S. 911 (1975); *United States* v. *King,* 485 F.2d 353, 360 (10th Cir. 1973); *United States* v. *Noah,* 475 F.2d 688, 696 (9th Cir.), cert. denied sub nom. *Ross* v. *United States,* 414 U.S. 821, and cert. denied, 414 U.S. 1095 (1973); *United States* v. *Goodwin,* 470 F.2d 893, 900 (5th Cir. 1972), cert. denied, 411 U.S. 969 (1973); *United States* v. *Tillman,* 470 F.2d 142, 144 (3d Cir. 1972), cert. denied sub nom. *McCants* v. *United States,* 410 U.S. 968 (1973).

In some similar cases, prompt, curative instructions by the judge are coupled with overwhelming evidence of the defendant's guilt. See, e.g., *United States* v. *Bryant,* 490 F.2d 1372, 1379 (5th Cir.), cert. denied sub nom. *Impson* v. *United States,* 419 U.S. 832 (1974). The majority in *United States* v. *Anderson, supra,* concluded that the error there was not harmless beyond a reasonable doubt because the evidence against the defendant was not overwhelming. In the present case, there was a sharp conflict between the testimony of the victim and that of the defendant. Thus the record does not provide, as it has in some other cases, clear, overwhelming evidence of guilt. On the other hand, we believe that harmlessness beyond a reasonable doubt may exist because of the trivial or inconsequential nature of the entire incident. This was the view of the dissenting judge (and of four of the judges on the request for a rehearing en banc) in *United States* v. *Anderson, supra* at 1054.

From our reading of the transcript, we conclude that the defendant was not prejudiced by questioning which indicated that he had not mentioned to the police the victim's attempted or actual criminal conduct. The judge promptly advised the jurors that persons under arrest do not have to say anything and said the questioning was not proper. We believe that the minds of an

average jury would not be affected adversely toward a defendant. Indeed, the average juror might well have been influenced favorably toward the defendant because of the judge's chastisement of the prosecution's over-reaching.

At this time, we reject an automatic rule which mandates a mistrial whenever the prosecutor questions a defendant concerning his silence in circumstances where the defendant had no duty to speak. We believe that prompt, forceful, critical instructions, such as were given here, can obviate any prejudice and eliminate any constitutional basis for a claim that a defendant was entitled to a mistrial. In our opinion, the judge's response here was sufficient to protect the defendant's constitutional rights, and his decision not to grant a mistrial was not an abuse of discretion. Cf. *Commonwealth* v. *Paradiso,* 368 Mass. 205, 210, 213-214 (1975).

The defendant argues that the judge failed to comply with the requirements laid down in *United States* v. *Flannery,* 451 F.2d 880, 882 (1st Cir. 1971), which adopted a rule that a prosecutor's uncorrected comment on a defendant's failure to contradict certain evidence was reversible error, if that contradiction could come only through testimony from the defendant.[7] We regard the First Circuit Court of Appeals rule as a supervisory, rather than as a constitutionally mandated, one. See *United States* v. *Medina,* 455 F.2d 209, 211 (1st Cir. 1971). It is not necessarily applicable to prosecutorial questioning when the defendant's right to interrupt by objection is expected to be exercised to protect his rights more freely than during the prosecutor's closing argument. And, finally, we view the judge's instructions in

---

[7] The First Circuit said (at 882): "If the court interrupts the argument, instructs the jury fully on the defendant's constitutional right not to testify and the jury's obligation not to draw unfavorable inferences and, in addition, states to the jury that the U. S. Attorney was guilty of misconduct, we may find no prejudice; otherwise we will reverse."

these different circumstances as complying substantially with the rule laid down in the *Flannery* case.[8]

The defendant also relies on *United States* v. *Hale*, 422 U.S. 171 (1975), in which the Supreme Court exercised its supervisory authority over lower Federal courts to grant a new trial in circumstances which were somewhat similar to those here.[9] The *Hale* opinion does not discuss the question of harmless error. The reasoning of that opinion gives no weight to the fact that the trial judge undertook to give curative instructions to the jury and indeed treats his action as if he had permitted the line of cross-examination. *Id.* at 181. A sharply divided Circuit Court of Appeals had concluded that the prosecutor's questioning was not permitted constitutionally and that the error was not harmless beyond a reasonable doubt. *United States* v. *Anderson*, 498 F.2d 1038 (D.C. Cir. 1974) (two to one decision) (rehearing en banc denied, five to four),[10] aff'd on other grounds sub nom. *United States* v. *Hale*, 422 U.S. 171 (1975). The United States Supreme Court has not concluded yet that constitutional error can never be harmless beyond a reason-

---

[8] A judicial responsibility to interrupt an improper closing argument may be appropriate, whereas a sua sponte interruption of a possibly improper, but unchallenged, line of questioning may not be appropriate and possibly might be harmful to a defendant whose counsel may know that the forthcoming answer will be beneficial to his client's cause. Closing argument of the character made by the prosecution in the *Flannery* case never can have a beneficial effect on the defendant's case, and, therefore, judicial interruption fairly may be mandated.

[9] In the *Hale* case, the cross-examination concerned the defendant's failure to offer an exculpatory explanation while in police custody. Here the cross-examination concerned the defendant's failure to accuse the prosecution's principal witness of attempted theft. Each question bore on the defendant's credibility, but only the question in the *Hale* case dealt with a fact relating to the defendant's guilt of the crime charged.

[10] The instruction given in Hale's trial (quoted in the dissent in *United States* v. *Anderson*, *supra* at 1046) is quite similar to that given here.

able doubt where in similar situations there are forceful instructions which are designed to cure the error.

Prosecutorial indiscretions involving cross-examination about a witness's silence while in police custody have not been a source of a significant number of appeals in recent years in this Commonwealth, and, in those recent cases where the issue has arisen, reversal of a conviction has been the consequence. See *Commonwealth* v. *Bennett,* 2 Mass. App. Ct. 575 (1974); *Commonwealth* v. *Morrison,* 1 Mass. App. Ct. 632 (1973). Prosecutors run a substantial risk of thwarting their own goals by initiating any cross-examination concerning witnesses' silence while in custody. In this case, however, the circumstances do not call for us to invoke an inflexible rule of general application or justify a conclusion that there was reversible, constitutional error.

3. The defendant challenges the judge's charge to the jury that the victim's consent to an "unnatural and lascivious act" was immaterial in determining whether the crime was committed. The case was tried before our decision in *Commonwealth* v. *Balthazar,* 366 Mass. 298 (1974), which concluded that a consensual act was not a crime under G. L. c. 272, § 35.

Although the transcript shows that the defendant's counsel was aware that the *Balthazar* case had been argued in this court by a representative of his office two days before the judge charged the jury in this case, the defendant took no exception to the judge's charge, made no request for instructions consistent with the view he now asserts, and, in fact, stated that he was content with the charge. In this situtation, we see no basis for permitting the defendant to object here for the first time to the charge as given. *Commonwealth* v. *Balthazar, supra* at 303.

4. The defendant's final contention is that the statutory prohibition in G. L. c. 272, § 35, against "unnatural and lascivious" acts is unconstitutionally vague and that his motion for a directed verdict should have been allowed as

to the indictment based on § 35. The defendant recognizes that this issue was decided adversely to his position in *Commonwealth* v. *Balthazar, supra,* but raises it "to preserve the issue for further proceedings, if necessary." In this respect, we point out that the defendant has not argued to us that § 35 is unconstitutionally vague as interpreted by us in the *Balthazar* case.

*Judgments affirmed.*