COMMONWEALTH *vs.* WILLIAM A. REILLY, JR.

Suffolk.    November 15, 1976. — June 21, 1977.

Present: KEVILLE, GOODMAN, & ARMSTRONG, JJ.

*Unnatural and Lascivious Act. Practice, Criminal,* Charge to jury.
*Evidence,* Hospital record, Collateral matter. *Kidnapping. Rob-
bery.*

A defendant who was charged with the commission of an unnatural
and lascivious act was entitled, upon his request, to an instruction
that he could not be convicted on the charge if the act was com-
mitted with consent in private even though the issue of consent was
not raised by the evidence. [436-438]
A judge's error in failing to give a jury instruction on the issue of con-
sent in connection with an indictment charging the defendant with
the commission of an unnatural and lascivious act did not taint the
defendant's convictions of kidnapping and larceny from the person.
[438]
At the trial of indictments charging the defendant with the commission
of an unnatural and lascivious act, kidnapping and unarmed rob-
bery, there was no error in excluding from evidence a hospital rec-
ord showing that the victim had been treated in the psychiatric
service of the hospital about the time of the incident.   [438-440]

INDICTMENTS found and returned in the Superior Court
on May 2, 1972.

The cases were tried before *Tisdale, J.*

*Robert S. Potters* for the defendant.

*Robert P. Ziemian,* Assistant District Attorney, for the
Commonwealth.

GOODMAN, J.    The defendant appeals (G. L. c. 278,
§§ 33A-33G) from convictions on an indictment charging
the commission of an unnatural and lascivious act, G. L.
c. 272, § 35, an indictment charging kidnapping, and so
much of an indictment for unarmed robbery as charged

Commonwealth *v.* Reilly.

larceny from the person.[1] The defendant argues two assignments of error.

1. The defendant contends that he was entitled to an instruction that he could not be convicted of having another commit an act of fellatio on him, if it was committed with consent in private. We agree that the trial judge committed error in refusing such an instruction.

The Commonwealth's case rested primarily on the testimony of a woman (hereafter referred to as the victim) who testified that on March 22, 1972, at about 11:30 P.M., as she was crossing Broadway in Boston, on her way to the Park Square area, the defendant, a stranger, stopped his automobile and asked her if she wanted a lift. After some hesitation, she accepted. Instead of taking her to her destination, the defendant drove at a high rate of speed onto the Southeast Expressway. When she protested, he grabbed her wrist and threatened her. Her wrist had been treated for a self-inflicted wound; it still had stitches and was bandaged and splinted. He drove to an emergency parking area on the expressway where he forced her to commit an act of fellatio. He also took $22 from her pocketbook. She managed to escape and flag down a passing motorist who took her to the police station of the Metropolitan District Commission at Kosciuszko Circle.

The defendant's version was completely different. He testified that while he was stopped at a light at the corner of Tremont and Boylston streets, the victim solicited him; he agreed to go with her to her apartment. When in the automobile she told him that she wanted $50 instead of the $20 she had originally asked. He refused, but when she threatened to accuse him of rape he ostensibly agreed. He drove to a gas station and then to an emergency area on the Southeast Expressway. There he went out of the automobile, threatening to summon a policeman. She also went

---

[1] The robbery indictment was submitted to the jury which found the defendant guilty only of larceny from the person. The defendant was also convicted on an indictment charging assault and battery, which was placed on file with the defendant's consent.

Commonwealth *v.* Reilly.

out of the automobile, and he thereupon went back in and drove off. At no time did they engage in sexual activity.

The evidence in this case is much like that in *Commonwealth* v. *Balthazar*, 366 Mass. 298, 299, 303, n.4 (1974), also a prosecution under G. L. c. 272, § 35. The victim in that case testified to being driven by the defendant under threat to a secluded spot where she was forced to commit an act of fellatio on the defendant. He did not testify but defended on the ground that the case was one of mistaken identity. The court in the *Balthazar* case held that consensual conduct in private was not prohibited by § 35 and that the defendant, upon request (not made in the *Balthazar* case), would have been entitled to an instruction submitting the issue of consent to the jury, although, as in the instant case, the defendant's denial of complicity in such an act did not raise any significant factual dispute concerning consent. In this case such an instruction was requested and should have been given in the charge, at least on the question of consent.[2]

The Commonwealth argues that consent is a defense which the defendant must put in issue if the Commonwealth is to be required to adduce evidence that the act was without consent. This contention misconceives the significance of the *Balthazar* case. That case concluded that "consensual conduct in private between adults is not prohibited by [G. L. c. 272,] § 35." *Commonwealth* v. *Balthazar*, 366 Mass. at 302. That the act was consented to is not "a matter of excuse or justification" (Model Penal Code § 1.12[3][c] [1962], definition of "affirmative defense"), for unnatural and lascivious conduct — however pejorative that expression may be — is no longer, in those circumstances, a crime required to be excused or justified. See *Commonwealth* v. *Morgan*, 369 Mass. 332, 344 (1975).

The Commonwealth asks us to analogize to *Common-*

---

[2] The bare suggestion in the Commonwealth's brief that the act was not done in private does not help its case. Without attempting to set down a rule about how public the act must be (cf. G. L. c. 272, § 16; G. L. c. 277, § 79), it is clear that, at the very least, a jury question was presented.

*wealth* v. *McKay*, 363 Mass. 220 (1973) (assault with intent to rape), in which the Supreme Judicial Court held that evidence of a victim's virginity was not admissible until the issue of consent was raised by the defendant. This holding is the result of an assessment of the prejudicial effect of such evidence weighed against its need where consent is not made an issue to contradict evidence of force. The *McKay* case does not affect the requirement that a charge to a jury set out the elements of a crime.

A more relevant analogy is to be found in cases which construe G. L. c. 272, § 28A (as appearing in St. 1959, c. 492, § 2) and G. L. c. 272, § 28 (as appearing in St. 1959, c. 492, § 1) — obscenity statutes — to include the element of a defendant's knowledge of the obscene nature of the materials involved in order to preserve the statutes from the constitutional infirmities which invalidated a similar statute in *Smith* v. *California*, 361 U. S. 147 (1959). See *Demetropolos* v. *Commonwealth*, 342 Mass. 658 (1961); *Commonwealth* v. *Corey*, 351 Mass. 331 (1966); *Commonwealth* v. *Palladino*, 358 Mass. 28 (1970). Absent an allegation of this necessary element (scienter) a complaint even in the words of the statute has been held faulty because it did not state a crime. *Commonwealth* v. *Palladino, supra.*

The defendant also argues that the error in the charge in connection with the indictment under G. L. c. 272, § 35, taints the convictions for kidnapping and larceny from the person. We disagree. The charge on the kidnapping indictment clearly instructed the jury that a "forcible" act was necessary in order to convict (G. L. c. 265, § 26), and the instructions to the jury on the indictment charging robbery (G. L. c. 265, § 19) clearly set out the necessary element of coercion (see G. L. c. 277, § 39), and distinguished it from the lesser included offense of larceny from the person, which does not require force. G. L. c. 266, § 25. And indeed the jury made the distinction and acquitted the defendant of robbery but convicted him of larceny from the person.

2. The defendant also assigns as error the trial judge's refusal to admit portions of a hospital record of the Cam-

bridge City Hospital, to which the victim had been admitted on February 16, 1972, for treatment of a wound of her wrist, self-inflicted with a razor blade. Defense counsel called as a witness the keeper of the hospital records, stating that "the whole purpose in bringing this keeper of the records in this morning is purely and simply to give dates of admission and discharge. I think this is clearly relevant to the case, particularly if it goes to the time around which the alleged offense occurred."

The trial judge then held a voir dire at which the keeper of the records testified to the various dates when the victim was admitted to and left the hospital as indicated in the hospital record. She also read various portions of the hospital record. (The hospital record itself was never marked for identification and is not before us.) At the end of the voir dire the judge ruled that none of the material was admissible, and the defendant took an exception which is the basis of his assignment of error.

The record indicated that after her admission on February 16, 1972, she left the hospital on March 18, 1972, at which time she was in the psychiatric service. Thereafter, at various times between March 19, 1972, and March 24, 1972, she returned to the psychiatric service. Portions of the record read at the voir dire contained a wide variety of miscellaneous information which — quite apart from the problems raised by the patient-psychotherapist privilege, G. L. c. 233, § 20B — was collateral at the very least and quite properly excluded. The hospital record included, for example, the victim's report of "a very disruptive and combative relationship between her parents" and the legal difficulties of her boyfriend. Nor did the defendant indicate just what excluded material his exception was directed to. In any event, defense counsel indicated at oral argument in this court, consistent with his statement prior to the voir dire, that what he was requesting from the hospital record was the fact that the victim had been treated in the psychiatric service of the hospital about the time of the incident. This, without more, is of little significance to the defense offered at the trial that (as the defendant's brief puts it)

"she was lying and trying to extort money from the defendant." No abuse of the trial judge's discretion is shown. *Commonwealth* v. *Caine,* 366 Mass. 366, 370 (1974). See *Commonwealth* v. *Ennis,* 2 Mass. App. Ct. 864 (1974).

*Judgment on indictment no. 65658 reversed, verdict set aside.*

*Judgments on indictments nos. 65659 and 65660 affirmed.*