## COMMONWEALTH *vs*. SIDNEY R. BENOIT.

No. 88-P-316.

Berkshire.   October 27, 1988. — December 8, 1988.

Present: GREANEY, C.J., ARMSTRONG, & SMITH, JJ.

*Unnatural and Lascivious Act. Consent. Due Process of Law,* Vagueness of statute. *Practice, Criminal,* Instructions to jury. *Words,* "Unnatural and lascivious."

Neither the child's lack of consent to the commission of a sexual act, nor public exposure of the act, need be shown for conviction under G. L. c. 272, § 35A, of committing an unnatural and lascivious act on a child under the age of sixteen. [643-646]

The prohibition of G. L. c. 272, § 35A, against the commission of an "unnatural and lascivious act" was not unconstitutionally vague as applied to the conduct of a forty-eight year old male defendant charged with the commission of unnatural and lascivious acts on a fourteen year old girl. [646-648]

At a criminal trial, the judge's specific instructions to the jury that a finding of cunnilingus would warrant the defendant's conviction under G. L. c. 272, § 35A, which supplemented instructions requested by the defendant's trial counsel giving the jury the general definition of the term "unnatural and lascivious" as stated in *Jaquith* v. *Commonwealth,* 331 Mass. 439, 442 (1954), did not, in the circumstances, create a substantial risk of a miscarriage of justice. [648-649]

INDICTMENTS found and returned in the Superior Court Department on March 13, 1986.

The cases were tried before *Raymond R. Cross,* J.

*Patricia A. O'Neill,* Committee for Public Counsel Services, for the defendant.

*Lee Diane Flournoy,* Assistant District Attorney, for the Commonwealth.

GREANEY, C.J.   A jury in the Superior Court convicted the defendant on two indictments charging him under G. L. c. 272, § 35A, with the commission of unnatural and lascivious acts

on a child under the age of sixteen. He argues that (1) G. L. c. 272, § 35A, is inapplicable to consensual conduct in private between persons fourteen years of age or older, (2) he was not put on fair notice that the conduct that led to his convictions could be found to be unnatural and lascivious under present definitions of those terms, and (3) the jury instructions defining an unnatural and lascivious act were so vague as to mislead the jury and create a substantial risk of a miscarriage of justice. We affirm the convictions.

The evidence indicated the following. The victim (we shall call her Jean) lived next door to the defendant. She was fourteen at the time of the incidents; the defendant was forty-eight. Jean became involved with the defendant sometime between the ages of seven and ten when she accepted a dare to go over to the defendant's house and "ask him to show (her) his penis." The defendant responded that he would "do that and a few other things." Thereafter, on an almost daily basis, Jean would visit the defendant at his home. On these visits, the defendant would rub her vagina and touch various parts of her body while she "sometimes" touched his penis. On April 4, 1985, Jean (by then fourteen years old) and the defendant had "planned to make love." Jean went to his house that night. She removed her outergarments and underwear and lay down on the couch. The defendant proceeded to "lick [her] vagina with his tongue." Jean testified that the defendant did not force her to submit to this sexual contact and that "none of his body parts went into any of my body parts." This incident became the basis of the defendant's first conviction.

Jean also testified to a second act of intimate sexual contact with the defendant which took place on or about December 3, 1985. Specifically, she stated that, on or about that date, she had "oral sex" with the defendant in a manner similar to the earlier contact, namely, she took off her clothes and lay down on the couch while the defendant proceeded to lick her vagina. This incident was the basis of the defendant's second conviction. Jean testified that throughout the relationship she was in love with the defendant, that she offered no resistance to the oral-vaginal contacts and other sexual liberties that occurred

over the approximate seven-year period, and that in the two incidents described above the defendant's tongue had not penetrated her vagina.

1. The defendant argues that to convict him under G. L. c. 272, § 35A, the Commonwealth had to prove that Jean did not consent to the sexual acts and that the acts did not occur in private. His conclusion that nonconsent and public awareness of an unnatural and lascivious act are elements of the offense proscribed by G. L. c. 272, § 35A, is based principally upon (a) the Supreme Judicial Court's opinion in *Commonwealth* v. *Burke*, 390 Mass. 480 (1983), which holds that a lack of consent must be shown for a conviction under G. L. c. 265, § 13B, of nonharmful indecent assault and battery on a child under fourteen, and (b) what the defendant argues is the proper construction of § 35A. The defendant concludes that, because the evidence before the grand jury tended to indicate that Jean had consented to the sexual acts which took place privately in the defendant's home, his motions to dismiss the indictments, or his motions for required findings of not guilty, should have been allowed because the Commonwealth could not establish before the grand jury or the trial jury these essential elements of the crimes charged.

The decision in *Commonwealth* v. *Burke, supra*, does not help the defendant. The reasoning in that case, that nonconsent is an element of a nonharmful indecent assault and battery on a child under fourteen, rests upon the assumption that the Legislature, by using the phrase "assault and battery" in G. L. c. 265, § 13B, intended to incorporate the common law definition of a battery. Correspondingly, that definition also recognized consent as a defense to a nonharmful touching. *Id.* at 484-485. In the absence of express legislative intent otherwise, the court in *Burke* held that G. L. c. 265, § 13B, did not establish fourteen as a legal age for capacity to consent to a nonharmful battery and that the common law also did not establish any other legal age of consent.[1] *Ibid.* See *Commonwealth* v. *Green*, 399 Mass. 565, 566-567 (1987).

---

[1] By St. 1986, c. 187, the Legislature has indicated its intent with respect to G. L. c. 265, § 13B, by amending the statute to provide that a child under

Accordingly, the passage from *Burke* relied upon by the defendant which states that "[t]he capacity to consent to sexual touching, short of intercourse or attempted intercourse, is an issue of fact," 390 Mass. at 482, must be read in light of the holding in that case that G. L. c. 265, § 13B, encompasses the common law elements of a nonharmful assault and battery. Entirely different language, which has no clear common law antecedents or meanings, has been used by the Legislature in G. L. c. 272, § 35A. For this reason, the *Burke* decision has no application to this case.

We also reject the defendant's other arguments that § 35A does not apply to the commission in private by an adult with a minor of an unnatural and lascivious act. Both § 35 and § 35A of G. L. c. 272 punish the commission of an unnatural and lascivious act.[2] These statutes contain no language making nonconsent an essential element of the crimes prohibited therein, and prior to the decision in *Commonwealth* v. *Balthazar*, 366 Mass. 298 (1974), "it was black letter law that consent was not a defense to an alleged violation of [G. L. c.] 272, § 35," *Balthazar* v. *Superior Court*, 428 F. Supp. 425, 429 (D. Mass. 1977), or of § 35A. Moreover, neither statute differentiates between conduct occurring in public and that occurring in private. To avoid a possible constitutional problem, the Supreme Judicial Court, in *Commonwealth* v. *Balthazar*, 366 Mass. at 300-302, construed § 35 to be "inapplicable to private, consensual conduct of adults." The Court did so in light of changes in community values since it had last considered the meaning of the words "unnatural and lascivious act" in the 1954 decision of *Jaquith* v. *Commonwealth*, 331 Mass. 439. See 366 Mass. at 300-302. As so construed, "[t]he rationale of G. L. c. 272, § 35, is to prevent the open flouting of community standards regarding sexual matters" between con-

fourteen is to be deemed incapable of consenting to an indecent assault and battery.

[2] Section 35A differs from § 35 by punishing the commission of such an act with a child under the age of sixteen and by providing for a mandatory five-year prison sentence for anyone over age eighteen who commits a second or subsequent violation.

senting adults. *Commonwealth* v. *Ferguson*, 384 Mass. 13, 16 (1981).

The rationale of G. L. c. 272, § 35A, differs substantially from the purpose underlying § 35, however. In enacting § 35A, the Legislature exercised its well-established power to safeguard minors from sexual exploitation and manipulation. That power "constitutes a government objective of surpassing importance." *New York* v. *Ferber*, 458 U.S. 747, 757 (1982). The Legislature appears to have been cognizant that minors, particularly post-pubescent girls still in their early adolescence, "remain seriously deficient in comprehension of the social, psychological, emotional and even biological consequences of sexuality" and, consequently, that they are in need of protection from adults who would engage with them in intimate sexual contact to arouse or gratify mutual sexual desires. Model Penal Code and Commentaries § 213.1 comment 6, at 328 (1980). See *Commonwealth* v. *Dunne*, 394 Mass. 10, 19 n.17 (1985).

Additionally, community values still strongly condemn the sexual victimization of minors, and the Legislature has been encouraged by the constancy of those values to pass, in addition to G. L. c. 272, § 35A, other legislation protecting minors from sexual exploitation. See, e.g., G. L. c. 265, § 13B, as amended by St. 1986, c. 187 (indecent assault and battery on a child under fourteen), see note 1 *supra*; G. L. c. 265, § 23 (rape of a child under sixteen); St. 1988, c. 226, §§ 1-4, amending G. L. c. 272, §§ 29A, 29B, & 31 (sexual exploitation of minors under eighteen). See also *Ginsberg* v. *New York*, 390 U. S. 629 (1968) (it is within the State's power to punish persons who sell sexually explicit magazines or materials to minors under seventeen). A violation of G. L. c. 262, § 35A, is considered an affront to public morality (notwithstanding that the conduct occurs privately) because of the outrage the violation causes to parental and community values.

These considerations persuade us that § 35A is to be enforced as intended and written. We see no need to dwell on the defendant's various other arguments on this aspect of the appeal. We conclude that G. L. c. 272, § 35A, should not be construed to make nonconsent an element and that proof of pub-

lic exposure of the unnatural and lascivious act is not necessary for conviction under the statute.[3]

2. The defendant also argues that he was not fairly placed on notice that the act of placing his tongue on, and licking, the victim's vagina could be found by a jury to be an unnatural and lascivious act. Accordingly, he contends that G. L. c. 272, § 35A, is unconstitutionally vague as applied to his conduct. He concludes that his motion to dismiss the indictments for vagueness should have been allowed or, at the very least, that, after the Commonwealth rested, required findings of not guilty should have been entered on each charge.

In order to survive a vagueness challenge, "[a] penal statute must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Commonwealth* v. *Williams*, 395 Mass. 302, 304 (1985), quoting from *Kolender* v. *Lawson*, 461 U.S. 352, 357 (1983). The vagueness doctrine, however, "is not a counsel of perfection." *Commonwealth* v. *Gallant*, 373 Mass. 577, 580 (1977). A statute is not vague simply because "it requires a person to conform his conduct to an imprecise but comprehensible normative standard . . . ." *Commonwealth* v. *Williams*, 395 Mass. at 304, quoting from *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977). "Such a standard is not impermissibly vague even though reasonable minds might differ whether particular conduct at the periphery of the 'core' comports with it: the jury decide the question under instructions, as they do in easier cases to which the standard speaks more clearly." *Commonwealth* v. *Love, ante* 541, 546 (1988). Moreover, a sufficiently definite warning of criminal culpability may be achieved through judicial application of the

---

[3] Our conclusions restate the views of the decisions that looked at § 35A after the *Balthazar* decision. See *Commonwealth* v. *Gallant*, 373 Mass. 577, 585-586 (1977); *Commonwealth* v. *Fleurant*, 6 Mass. App. Ct. 846, 846 (1978); *Commonwealth* v. *Zeitler*, 7 Mass. App. Ct. 543, 551 (1979). See also Nolan, Criminal Law § 251, at 123 (1976) ("Nonconsensual conduct in which the victim is forced to participate is still prohibited [under G. L. c. 272, § 35], and unnatural acts with a minor who consents [are] also prohibited").

statute to the same or similar conduct. *Commonwealth* v. *Balthazar*, 366 Mass. at 300, citing *Miller* v. *California*, 413 U.S. 15 (1973).

The conduct engaged in by the defendant falls within the boundaries of conduct found to constitute an unnatural and lascivious act by decisions prior to the dates of the incidents in this case. See *Commonwealth* v. *LaBella*, 364 Mass. 550, 551 (1974) ("oral contact with . . . genital area"); *Commonwealth* v. *Balthazar*,[4] 366 Mass. at 303 ("mouth on . . . genitals and on . . . buttocks or anus"). The conduct also conforms to lexical definitions of the term cunnilingus,[5] which Massachusetts decisions include in the term unnatural and lascivious act. See *Commonwealth* v. *Manning*, 367 Mass. 605, 609, 611 (1975); *Commonwealth* v. *Hill*, 377 Mass. 59 (1979); *Commonwealth* v. *Deschamps*, 1 Mass. App. Ct. 1, 2 (1972). Moreover, as stated above, general mores condemn engaging in this act with a child under sixteen. Therefore, "[w]e find it impossible to believe that any competent adult would be surprised at the conclusion that the conduct . . . found [by the jury in this case] was prohibited." *Commonwealth* v. *Hill*, 377 Mass. at 62. We reject the defendant's contention that cunnilingus has become a term of art in Massachusetts which requires proof of some penetration of the female's genital opening. Penetration may be required to establish some types of rape under statutes such as G. L. c. 265, § 22(*a*), compare *Commonwealth* v. *Bratt-*

---

[4] Following the Supreme Judicial Court's decision in *Balthazar*, the defendant pursued a writ of habeas corpus in the United States District Court for Massachusetts, where it was held that G. L. c. 272, § 35, was unconstitutionally vague as applied to his acts of fellatio and oral-anal contact. *Balthazar* v. *Superior Court*, 428 F. Supp. 425 (D. Mass. 1977). Specifically, the court found that at the time the conduct took place (July, 1972) neither the language of § 35 nor prior decisions sufficiently notified the defendant that his acts were prohibited. *Id*. at 427-428, 432-434. The District Court's decision was upheld on appeal. 573 F.2d 698 (1st Cir. 1978). In both decisions, however, it was stated that future defendants would be on notice that such conduct would be prohibited. *Id*. at 702.

[5] The American Heritage Dictionary (1976) defines "cunnilingus" (at 322) as "[o]ral stimulation of the clitoris or vulva" and defines "vulva" (at 1438) as "[t]he external female genitalia . . . ." A similar definition is found in Black's Law Dictionary 343 (5th ed. 1979).

*man,* 10 Mass. App. Ct. 579, 584 (1980), with *Commonwealth* v. *Mosby,* 11 Mass. App. Ct. 1, 17-18 (1980), and *Commonwealth* v. *Guy,* 24 Mass. App. Ct. 783, 785-787 (1987). It is, however, not the case with respect to proof of the commission of an unnatural and lascivious act under G. L. c. 272, §§ 35 and 35A, and the defendant could not reasonably have thought it otherwise.[6]

3. The jury instructions in the case (which were not objected to) posed no substantial risk of a miscarriage of justice. The defendant's trial counsel specifically requested that the jury be given the general definition of the term "unnatural and lascivious" as stated in *Jaquith* v. *Commonwealth,* 331 Mass. 439, 442 (1954). The requested instruction may have reflected a tactical decision by the defendant's trial counsel aimed at establishing uncertainty in the jurors' minds as to whether the acts complained of were, under the general language used in

---

[6] There is nothing to the contrary in *Commonwealth* v. *Gallant,* 373 Mass. at 584, which refers to cunnilingus that involves some penetration as constituting unnatural sexual intercourse under G. L. c. 265, § 22. The discussion of the evidence in *Commonwealth* v. *Baldwin,* 24 Mass. App. Ct. 200, 203-205 (1987), concerns whether the jury in that case could have found at least minimal penetration of the female sex organ in order to support a conviction of rape. Finally, the defendant cannot rely on the statement in *Commonwealth* v. *Zeitler,* 7 Mass. App. Ct. 543, 550 (1979), that touchings of a female's pelvic area do not violate § 35A, because the discussion at 551 of that decision makes clear that cunnilingus does violate §§ 35 and 35A.

Although a defendant in Massachusetts would not be expected to be on notice of the criminal law of other States, it is also worth noting that States that have considered the issue have uniformly found that the conduct in question here constitutes cunnilingus which is punishable under statutes analogous to G. L. c. 272, §§ 35 and 35A. See *State* v. *Kish,* 186 Conn. 757, 762-765 (1982) (penetration not required for cunnilingus); *State* v. *Murry,* 136 La. 253, 260 (1914) (cunnilingus is "committed with the mouth and the female sexual organ"); *Partain* v. *State,* 63 Md. App. 260, 265-267 (1985) ("cunnilingus does not require penetration of the genitals"); *State* v. *Thompson,* 574 S.W.2d 432 (Mo. App. 1977) (penetration is not necessary to show cunnilingus); *State* v. *Brown,* 225 Neb. 418, 428-430 (1987) ("once the perpetrator's lips or tongue touches any part of a female's genitalia, the act of cunnilingus is complete, irrespective of any actual penetration"); *State* v. *Fraction,* 206 N.J. Super. 532, 535-536 (1985) (insertion of the tongue into the victim's vagina need not be shown for cunnilingus); *State* v. *Ludlum,* 303 N.C. 666, 669-674 (1981) (same).

*Jaquith,* "in deviation of accepted customs and manners." The judge granted the request.

In any event, the broad language of *Jaquith,* which would be inappropriate standing alone in jury instructions today, see *Balthazar* v. *Superior Court,* 573 F.2d at 700-702, was promptly pinned down by specific instructions indicating that a finding of cunnilingus would warrant the defendant's conviction under § 35A. Defining an unnatural and lascivious act in terms of specific conduct is an acceptable method of jury instruction because it provides the jury with a proper standard with which to measure the defendant's conduct and does not leave them to follow their own predilections. See *Commonwealth* v. *Balthazar,* 366 Mass. at 303; *Commonwealth* v. *Duarte,* 2 Mass. App. Ct. 909 (1974). Cf. *Commonwealth* v. *Perretti,* 20 Mass. App. Ct. 36, 44 (1985). Finally, since we have concluded that the acts here could properly be described as acts of cunnilingus, the jury were not misled into applying that term to conduct clearly outside the term's meaning.

*Judgments affirmed.*