COMMONWEALTH *vs.* RICHARD FERGUSON.

Worcester.  March 3, 1981. — July 1, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Unnatural and Lascivious Act.*

At the trial of a defendant for commission of an unnatural and lascivious act under G. L. c. 272, § 35, evidence that the act took place in January at 9:00 at night in the defendant's automobile which was parked behind a gas station in a parking lot abutted on two sides by multifloor residential dwellings was insufficient to support a finding that the conduct occurred in a public place. [15-19] HENNESSEY, C.J., with whom NOLAN and LYNCH, JJ., joined, dissenting.

COMPLAINT received and sworn to in the Central Worcester Division of the District Court Department on January 19, 1979.

Upon appeal for trial by a jury of six, the case was tried before *Garbose*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Claudia C. Conway* (*Thomas F. Sullivan, Jr.*, with her) for the defendant.

· *William E. Loughlin*, Assistant District Attorney, for the Commonwealth.

LIACOS, J.  The defendant appeals pursuant to G. L. c. 278, §§ 33A-33G, from his conviction in the six-member jury session of a District Court of the crime of commission of an unnatural and lascivious act; to wit, voluntary submission to fellatio in the front seat of a parked car. G. L. c. 272, § 35.  The defendant was sentenced to pay a fine of $125.  On appeal, we allowed the defendant's application for direct appellate review.

We reverse the defendant's conviction on the ground that the Commonwealth's evidence was insufficient to support a

finding beyond a reasonable doubt that the complained of conduct took place in a "public place." We agree with the defendant's contention that the trial judge should have granted the defendant's motion for a required finding of not guilty on this basis. In view of this conclusion, we need not reach the defendant's other claims of error.

1. *The Commonwealth's evidence.* The Commonwealth's evidence consisted solely of the testimony of the arresting police officer, Richard M. Sandberg. We summarize that testimony. On the evening of January 18, 1979, Officers Richard Sandberg and Henry R. Gaylord of the Worcester police department, both in plain clothes, observed a woman, known to them by sight, standing on the sidewalk motioning to passing motor vehicles. Shortly after 8:30 P.M. they directed the woman to leave the area. The officers watched the woman as she walked away. They observed the defendant drive up to the curb and, after a brief conversation, the woman got into the defendant's car. The two officers followed the defendant's car in their cruiser for several blocks, until at approximately nine o'clock it entered a paved blacktop parking lot, located at 46 Wellington Street, Worcester.

The parking lot was abutted on the north and east by multifloor, multiunit residential dwellings; and on the west partially by a cottage-type house with several apartments. A gasoline station abutted the rear portion of the westerly perimeter of the lot. A building next to the property at 46 Wellington Street had been destroyed by fire. The building along the north perimeter of the lot was well illuminated and separated from the lot by a fence. There were street lights on Wellington Street. Officer Sandberg did not know if the parking lot itself was illuminated. There were six or seven other automobiles in the lot. It was a clear night. The temperature was below zero and the wind was blowing fiercely. The ground was icy in spots.

The defendant drove to the rear of the parking lot and backed into a space behind the gas station area. The officers parked their cruiser on Wellington Street and with unlit

flashlights in hand they walked behind other cars parked in the lot and very cautiously came behind the defendant's car. Officer Sandberg then went to the driver's side of the vehicle; Officer Gaylord went to the passenger's side. Officer Sandberg bent over slightly to peer through the driver's window. The window was clear and the view into the car unobstructed. He observed the woman, her head in the defendant's lap, performing fellatio. The defendant was seated in a semi-reclining position toward the center of the vehicle. Officer Sandberg immediately shined his flashlight into the car, showed his badge, and identified himself as a police officer. He then arrested both the defendant and the woman.

Upon the completion of Officer Sandberg's testimony, the Commonwealth rested. The defendant's motion for a required finding of not guilty was argued on the issue whether there was sufficient evidence to warrant a finding that the act occurred in a public place. The judge denied the motion. The defendant rested without offering any evidence.

2. *Motion for required finding of not guilty.* In considering whether the Commonwealth's evidence is sufficient to withstand a motion for a required finding of not guilty we must determine whether that evidence, considered in the light most favorable to the Commonwealth, was sufficient to permit a jury reasonably to infer the existence beyond a reasonable doubt of each essential element of the crime charged. *Commonwealth* v. *Rhoades*, 379 Mass. 810, 815 (1980), and cases cited.

The only issue raised by the motion for a required finding was whether the evidence warranted a finding that the complained of conduct occurred in a public place. It was not disputed that the conduct complained of in this case was committed by two adults who engaged in a consensual act. General Laws c. 272, § 35, has been construed to be inapplicable to private, consensual conduct of adults. *Commonwealth* v. *Balthazar*, 366 Mass. 298 (1974). *Commonwealth* v. *Reilly*, 5 Mass. App. Ct. 435 (1977). For a consensual act to be punishable under G. L. c. 272, § 35, the

"public nature of the consensual act is an essential element to be proved by the prosecution." *Commonwealth* v. *Scagliotti*, 373 Mass. 626, 628 (1977), and cases cited.

The rationale of G. L. c. 272, § 35, is to prevent the open flouting of community standards regarding sexual matters. See Model Penal Code § 251.1, Comment (1980). The statutory object is to prevent the "possibility that the defendant's conduct might give offense to persons present in a place frequented by members of the public for reasons of business, entertainment, or the like." *Commonwealth* v. *Scagliotti, supra.* However, the statute is not designed to punish persons who desire privacy and who take reasonable measures to secure it. Model Penal Code, *supra.* A place may be public at some times and under some circumstances, and not public at others. Compare *Commonwealth* v. *Catlin*, 1 Mass. 8 (1804), with *Commonwealth* v. *Bishop*, 296 Mass. 459 (1937). The essential query is whether the defendant intended public exposure or recklessly disregarded a substantial risk of exposure to one or more persons. See *Commonwealth* v. *Cummings*, 273 Mass. 229, 231-232 (1930); *Commonwealth* v. *Wardell*, 128 Mass. 52, 53-54 (1880); *Commonwealth* v. *Catlin, supra* at 8-9; Model Penal Code, *supra*; 67 C.J.S. Obscenity § 11 (1978). Conduct is not established as public merely because another person actually observes the conduct. See *Commonwealth* v. *Catlin, supra.* The Commonwealth must prove that the likelihood of being observed by casual passersby must have been reasonably foreseeable to the defendant, or stated otherwise, that the defendant acted upon an unreasonable expectation that his conduct would remain secret.[1]

We believe the Commonwealth's evidence in this case falls short of the required standard.[2] The Commonwealth

---

[1] We reject the defendant's suggestion based on our construction of a statute inapposite to this case that G. L. c. 272, § 35, should be construed to reach only unnatural conduct which is actually observed by members of the public. See *Commonwealth* v. *Sefranka*, 382 Mass. 108, 117-118 (1980) (construing G. L. c. 272, § 53).

[2] At the time of trial the Commonwealth may have proceeded on an erroneous understanding of the legal principles involved. The assistant

produced no evidence suggesting that the defendant's conduct would be visible to anyone who had not stood immediately next to the car window and purposely directed his glance inside. Based upon the evidence, the likelihood of such an event occurring within the relevant time span is purely conjectural.

The Commonwealth contends that it easily could be inferred that the other cars parked in the lot belonged to people in the three multifamily dwellings adjacent to the lot, and that it is reasonable to infer that one or more of those persons may have had occasion to enter the lot and pass near the defendant's car. Alternatively, the Commonwealth posits one could reasonably infer that persons might pass through the lot at nine o'clock at night on their way to one of the buildings.

However, evidence warranting an inference that the public has theoretical access to a place does not necessarily support a finding that the place is public. In *State* v. *Metje*, 269 S.W.2d 128, 131 (Mo. App. 1954), the court aptly observed: "It . . . seems obvious that a place may be public at some times and private at others. . . . In the instant case it is elementary that the burden was upon the state to prove, beyond a reasonable doubt, that the place where the defendant was found was, at that time, 'public.' The only evidence presented on this issue was that the spot selected by the defendant was in the cemetery near a driveway which was used by the public. We have concluded that this evidence is not sufficient to prove this essential element of the

---

district attorney, arguing to the jury, implicitly conceded the insufficiency of the Commonwealth's evidence: "Now, is that in private? Did they go to an area which was away from the public? Did they eliminate the possibility that the public, who certainly used that area, *and maybe not at that particular time, and that really is not the question*: at that particular time. Was it a public area? Did it have access by the public? Could somebody have come along and seen an act such as this? Did they take that away from the public into a private area? *Is this the type of an act which should be taking place in a public parking lot across the city, never mind this one particular parking lot*? The question is yours to decide" (emphasis added).

case. The testimony did not indicate that the public used this roadway at night and we are not permitted to assume such use. . . . It is possible of course, that there might have been some vehicular or pedestrian traffic on this roadway at about the time defendant was discovered. We think, however, that in order to carry the burden cast upon it, the state was required to present evidence that there was sufficient nighttime traffic upon this driveway so that the court could have found that there was a reasonable likelihood that the defendant would have been seen by persons traveling thereon." See *People* v. *Holland,* 49 Mich. App. 76 (1973) (reversing conviction for private conduct in car parked in dark area at business establishment parking lot); *State* v. *J.O.,* 69 N.J. 574 (1976) (reversing conviction for conduct in one of several cars parked in a dark rest area adjacent to a State highway; no other persons observed in lot at the time); *Kirtley* v. *State,* 585 S.W.2d 724 (Tex. Crim. App. 1979) (reversing conviction for conduct in vehicle moving at night on a highway in absence of evidence whether highway was well traveled); *State* v. *Franzoni,* 100 Vt. 373 (1927) (reversing conviction for conduct during night in grandstand of fairgrounds in absence of evidence area was at that time used by others).

The Commonwealth's theory of this case requires piling inference upon inference. No evidence was produced showing direct access from the surrounding residential structures to the parking lot, or that the lot was ever used by persons using those buildings, or whether it was a public or private lot. There was no evidence regarding the character or use of the property at 46 Wellington Street; nor was there evidence regarding the size of the parking lot, the relative distance between the defendant's car and the other cars in the lot, or of the visibility of the inside of the defendant's car from the buildings or other cars. The evidence leaves to speculation the height and construction of the fence in the rear of the parking lot. There was no evidence whether the lot was frequented at night regularly, rarely, or at all. On this record it is purely a matter of conjecture whether the lot was frequently traveled or rarely traveled.

In any event the defendant may have been parked in a dark and remote area of the lot removed from the other cars and any pathways that would likely be used on this extremely cold and windy night. In choosing among the many possible inferences from the evidence presented in this case the jury would necessarily have had to employ conjecture.[3] A conviction based upon evidence tending equally to support alternative propositions, some tending to demonstrate innocence and others tending to show guilt, cannot stand. *Commonwealth* v. *Croft*, 345 Mass. 143, 145 (1962), and cases cited.

> *Judgment reversed.*
> *Verdict set aside.*
> *Judgment for the defendant.*

HENNESSEY, C.J. (dissenting, with whom Nolan and Lynch, JJ., join). I agree that it is incumbent upon the Commonwealth to prove that the consensual act occurred in a public place. However, this case describes a street incident toward which the majority opinion applies too narrow a view of the term "public place." I suggest that there can ordinarily be no reasonable expectation of privacy in a case like this where an automobile maneuvers in an urban area. *Scagliotti*, cited by the majority, does not add strength to the majority opinion, because that case simply held that the public nature of the episode was a question of fact for proof by the prosecution. Indeed, in *Scagliotti*, despite substantial evidence of efforts toward privacy, this court held that the defendant was not entitled to a directed verdict on the "public place" issue. 373 Mass. at 629. I add that defendants similarly situated, in future cases, may not take much comfort from the instant case, since it seems clear to me that the majority opinion is suggesting that the Commonwealth could have made its case with a few, easily provable, added facts.

---

[3] The jury did not take a view of the parking lot.