COMMONWEALTH vs. ROBERT J. KELLEY.

No. 87-485.

Worcester. November 6, 1987. — December 22, 1987.

Present: GRANT, DREBEN, & SMITH, JJ.

*Lewdness. Privacy. Words,* "Public."

An employee of a pest exterminating company who, on the basis of his alleged actions in a bedroom of a customer's home, had been charged under G. L. c. 272, § 53, with lewd and lascivious behavior was not entitled to a required finding of not guilty where, on the standard articulated by the Supreme Judicial Court in *Commonwealth* v. *Ferguson,* 384 Mass. 13 (1981), whether the defendant had "recklessly disregarded a substantial risk of exposure to one or more persons" was, on the evidence, a question "susceptible to conflicting interpretations," and thus was "within the peculiar province of the jury." [182-185]

In the case of an employee of a pest exterminating company who, on the basis of his alleged actions in a bedroom of a customer's home, had been convicted under G. L. c. 272, § 53, of lewd and lascivious behavior, the judge's failure to instruct the jury that, in order to convict, they must find that the defendant "recklessly disregarded a substantial risk of exposure to one or more persons," when considered with other language in the charge stressing the defendant's expectation of privacy, rather than the risk of exposure, required reversal under the "substantial risk of a miscarriage of justice" standard. [186-189]

COMPLAINT received and sworn to in the Clinton Division of the District Court Department on July 14, 1986.

On appeal to the jury session of the Fitchburg Division, the case was tried before *Elliott L. Zide,* J.

*Nona E. Walker,* Committee for Public Counsel Services, for the defendant.

*John J. Conte,* District Attorney, & *Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth, submitted a brief.

DREBEN, J. The defendant was sent by his employer, an exterminating company, to spray a house against carpenter ants.

He was discovered by the customer masturbating in a pair of women's underpants near a window in the master bedroom. Convicted of lewd and lascivious behavior[1] (G. L. c. 272, § 53),[2] the defendant claims he was entitled to a required finding of not guilty because, as matter of law, the complained-of conduct did not occur in a "public place." He also claims that the judge's charge misled the jury as to what is meant by "public."

Although G. L. c. 272, § 53, does not use the term "public", the court in *Commonwealth* v. *Sefranka,* 382 Mass. 108, 117 (1980), for constitutional reasons, held that the statute must be construed to require that the conduct occur in public. See also *Commonwealth* v. *Templeman,* 376 Mass. 533, 537 (1978); *Commonwealth* v. *Ferguson,* 384 Mass. 13, 15-16 (1981).

Before turning to the difficulties of defining "public", we recite briefly the facts which could have been found by the jury. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979). The defendant arrived at the house on July 11, 1986, at about noon. At home at the time were the customers (a married couple), their two children and two other young children. The husband, who had returned that morning from a tiring business trip, took the children outside to take them away from the wet pesticide. He and the defendant had previously discussed whether it would be safe to have the children in the house while the spraying was in progress. The defendant had

---

[1] The defendant was acquitted of a charge of larceny of property over one hundred dollars.

[2] General Laws c. 272, § 53, as appearing in St. 1983, c. 66, § 1, provides:

"Common night walkers, common street walkers, both male and female, common railers and brawlers, persons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, idle and disorderly persons, disturbers of the peace, keepers of noisy and disorderly houses, and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."

explained that it would take approximately twenty minutes for the pesticide to dry.

After speaking to his wife, who came out of the house a little later and who was going to take the children to lunch, the husband went back inside. He looked for the defendant in the living room and then went to the second floor to his bedroom to take a nap. There he saw the defendant standing about eighteen inches from the window engaged in the conduct described earlier.

That the defendant was near the window is not sufficient evidence of public conduct. In this case there was no testimony that one could see through the window from the lawn below, nor was there testimony as to the height of the window' in relation to the lower part of the defendant's body. Cf. *Commonwealth* v. *Ferguson,* 384 Mass. at 18. The only evidence as to what could be seen from outside the house came from the wife, who stated that she could not see into the window from the ground. Contrast *Commonwealth* v. *Bishop,* 296 Mass. 459, 460, 462 (1937) (defendant could be seen from neighboring building standing in middle of room naked and flashing a mirror); *Commonwealth* v. *Cummings,* 273 Mass. 229, 231 (1930) (public bathroom).

The question is, therefore, whether the defendant's conduct in the bedroom was "public" as defined by our cases. Acknowledging "great difficulty in attempting to define specifically the conduct proscribed by the 'lewd, wanton and lascivious persons' provision," the Supreme Judicial Court in *Commonwealth* v. *Sefranka,* 382 Mass. at 115-116 and 117-118, adopted a definition which, insofar as relevant here, prohibits "the commission of conduct *in a public place,* . . . when the conduct committed . . . involves the touching of the genitals . . . for purposes of sexual arousal, gratification, or offense, *by a person who knows or should know of the presence of a person or persons who may be offended by the conduct*" (emphasis supplied).

This definition appears to require both: 1) that the conduct be in a public place; and 2) that it be by a person who knows or should know of the presence of another person or persons

who may be offended. Earlier, in *Commonwealth* v. *Templeman,* 376 Mass. 533, 537 (1978), the court had held that § 53 was not applicable "to private conduct between two people in the home in which they both lived." The *Templeman* decision limited the " 'lewd, wanton and lascivious persons' provision . . . to 'public' conduct in the same sense as the 'disorderly persons' provision."[3] *Ibid.* That definition is strict. With respect to a "disorderly person" charge, the court has "insisted on a purpose to cause 'public' inconvenience, annoyance or alarm, or on reckless creation of a risk thereof, and ha[s] defined 'public' to mean 'affecting or likely to affect persons in a place to which the public or a substantial group has access.' " *Ibid.,* quoting from *Commmonwealth* v. *A Juvenile,* 368 Mass. 580, 585-586 (1975).

The customers' home, in the circumstances recounted, was not a place which meets the *Templeman* definition. It is not a place to which the "public or a substantial group has access."

The term "public" has recently been construed in connection with G. L. c. 272, § 35 (unnatural and lascivious acts).[4] *Commonwealth* v. *Ferguson,* 384 Mass. 13, 16 (1981). That case involved consensual activities by two adults in a car in a parking lot abutted by multi-storied buildings. In *Ferguson,* at 16, the court, citing Model Penal Code § 251.1 comment (Official Draft 1980), said, "the rationale of G. L. c. 272, § 35, is to prevent the open flouting of community standards regarding sexual matters." The opinion explained:

"A place may be public at some times and under some circumstances, and not public at others [citations omitted].

---

[3] The court in *Templeman* indicated that the limitation was adopted because otherwise there would be "a serious question whether the statute . . . could be applied to conduct that took place before the point was decided." *Ibid.*

[4] General Laws c. 272, § 35, is a statute which, like § 53, does not have any explicit statutory language requiring that the acts be "public." We do not see any reason to treat G. L. c. 272, § 53, differently from c. 272, § 35, for purposes of defining "public." Both are directed to open flouting of community standards. But see *Commonwealth* v. *Templeman,* 376 Mass. at 538 (as to c. 272, § 16), and *Commonwealth* v. *Ferguson,* 384 Mass. at 16 n.1.

The essential query is whether the defendant intended public exposure or recklessly disregarded a substantial risk of exposure to one or more persons . . . . The Commonwealth must prove . . . that the defendant acted upon an unreasonable expectation that his conduct would remain secret."[5]

The significance of the citation to the comment to the Model Penal Code § 251.1 is that the Code's formulation[6] does not focus on "whether the lewd act occurs in a 'public' place," but rather "recasts this element of the offense in terms of the known likelihood of observation by persons who would be affronted or alarmed." Comment 2, at 452, continues:

"Many places that are public in a property sense may be extremely private in terms of the likelihood of casual observation. Since the rationale of this provision is to prevent the open flouting of societal conventions, it should not condemn as debauchers of public morality persons who desire privacy and who take reasonable measures to secure it. Thus, for example, 'petting' on a deserted beach should not be punished as a public nuisance. On the other hand, erotic behavior may be a source of affront and alarm even though it is done on private property. Indeed, even if the place in question is not only privately owned but also limited in access, a lewd act done with knowledge of a likelihood of affronting others there present should be covered."

The *Ferguson* opinion clearly concurs with the Code that public places are not always public for purposes of such statutes. The opinion also suggests, by citations to the Code and to the older cases of *Commonwealth* v. *Wardell*, 128 Mass. 53, 53-54

---

[5] As indicated in note 10, *infra,* the court's use of both the terms "reckless" and "unreasonable" may cause some uncertainty as to the degree of culpability required.

[6] Section 251.1 entitled "Open Lewdness" provides: "A person commits a petty misdemeanor if he does any lewd act which he knows is likely to be observed by others who would be affronted or alarmed."

(1880) ("open" intentional conduct in a home of another), *Commonwealth* v. *Cummings,* 273 Mass. 229, 231-232 (1930) (G. L. c. 272, § 16), and *Commonwealth* v. *Bishop,* 296 Mass. 459 (1937), that, even if occurring on *private* property, intentional exposure or reckless disregard of a substantial risk of exposure to one or more persons is proscribed by G. L. c. 272, § 35. In other words, *Ferguson* may be taken to modify the *Templeman* requirement (376 Mass. 537) that the place be one "to which the public or a substantial group has access." Cf. also *Commonwealth* v. *Adams,* 389 Mass. 265, 272 (1983) (G. L. c. 272, § 16, "open and gross lewdness").

We return to the facts to review, under the *Ferguson* standard, the defendant's motion for a required finding of not guilty.[7] That the husband actually saw the defendant is insufficient. "Conduct is not established as public merely because another person actually observes the conduct." *Ferguson,* 384 Mass. at 16. Here, however, the evidence disclosed that the defendant was aware that the husband and wife, as well as four children, were about the premises. There was also evidence that from the window the defendant had an unobstructed view of the lawn and driveway where the family members were gathered shortly before he was interrupted. Had he looked, he would have seen that the husband was no longer outside. On the other hand, both the husband and the defendant testified to the conversation concerning safety of the pesticide and the fact that the spray would remain wet for twenty minutes. In this close case, whether the defendant "recklessly disregarded a substantial risk of exposure to one or more persons", *Ferguson,* 384 Mass. at 16, is a question "susceptible to conflicting interpretations" and, hence, is one "within the peculiar province of the jury." See *Commonwealth* v. *Scagliotti,* 373 Mass. 626, 629 (1977). Accordingly, it was not error to deny the defendant's motion for a required finding of not guilty.

---

[7] In *Ferguson* four Justices considered that the Commonwealth had not produced sufficient evidence to show that conduct in an automobile in a certain parking lot, at night, in subzero temperature was "public." Three Justices thought otherwise. *Ferguson,* 384 Mass. at 19.

This does not end our inquiry because there is a problem with the judge's charge. The *Ferguson* decision, as indicated earlier, states that the essential inquiry is whether the defendant was reckless "in disregard[ing] a substantial risk of exposure". Because of the importance of the *Ferguson* language to the judge's charge, the paragraph of *Ferguson* discussing the open flouting of community standards is quoted in full in the margin.[8]

The trial judge, following some, but not all, the language in *Ferguson,* charged the jury on the meaning of "public", both before the jury deliberated and later in response to a question from them in the course of their deliberations. In his initial charge, he required that the defendant's conduct be "in some sense public." He defined "public" as a place "where [the defendant had] no expectation of privacy" and explained that the statute's purpose is "to prevent the possibility" that a person's conduct might give offense to persons present in a place where the defendant has no "expectation of privacy."[9]

---

[8] "The rationale of G. L. c. 272, § 35, is to prevent the open flouting of community standards regarding sexual matters. See Model Penal Code § 251.1, comment (1980). The statutory object is to prevent the 'possibility that the defendant's conduct might give offense to persons present in a place frequented by members of the public for reasons of business, entertainment, or the like.' *Commonwealth* v. *Scagliotti, supra.* However, the statute is not designed to punish persons who desire privacy and who take reasonable measures to secure it. Model Penal Code, *supra.* A place may be public at some times and under some circumstances, and not public at others. Compare *Commonwealth* v. *Catlin,* 1 Mass. 8 (1804), with *Commonwealth* v. *Bishop,* 296 Mass. 459 (1937). The essential query is whether the defendant intended public exposure or recklessly disregarded a substantial risk of exposure to one or more persons. See *Commonwealth* v. *Cummings,* 273 Mass. 229, 231-232 (1930); *Commonwealth* v. *Wardell,* 128 Mass. 52, 53-54 (1880); *Commonwealth* v. *Catlin, supra* at 8-9; Model Penal Code, *supra;* 67 C.J.S. Obscenity § 11 (1978). Conduct is not established as public merely because another person actually observes the conduct. See *Commonwealth* v. *Catlin, supra.* The Commonwealth must prove that the likelihood of being observed by casual passersby must have been reasonably foreseeable to the defendant, or stated otherwise, that the defendant acted upon an unreasonable expectation that his conduct would remain secret." *Ferguson,* 384 Mass. at 16.

[9] The entire discussion of "public" in the judge's initial charge, was as follows: "And you have to find that such conduct was in some sense public. Now public in that sense means not private. A private place is one that aboards [*sic*] the defendant removal from the public or a place where the

After the jury had begun their deliberations, in response to a request to repeat the instruction on lewd and lascivious behavior, the judge once again informed the jury that, in order to convict the defendant, they had to find that he committed the act:

> "[i]n a place which is public in the sense that the defendant had no expectation or should have had no expectation of privacy or knew or should have known that he did not have any expectation of privacy or knew or should have known that . . . members of the public *might be . . . exposed* to this (inaudible) misconduct. You'd have to find . . . that the act was committed in a place . . . in which the defendant had no expectation of privacy." (Emphasis supplied.)

Although the defendant did not object to the charge and first raises the point on appeal, we think it clear that the jury may have convicted the defendant by merely finding that he should have known that there was "a possibility" that his conduct "might give offense to persons present in a place where he had no expectation of privacy."

The judge never mentioned the requirement that, in order to convict, the jury must find that the defendant "recklessly disregarded a substantial risk of exposure to one or more persons."[10] More important, the instruction, by discussing the pos-

conduct is removed from the possibility that one's conduct would give offense to the public. The statutory object here is to prevent the possibility that one's conduct might give offense to persons present in a place where he has no expectations of privacy. The Commonwealth must prove that the likelihood of being observed must have been reasonably foreseeable to the defendant or stated otherwise that the defendant acted upon an unreasonable expectation that this conduct would remain secret. If you are to convict the defendant of this you must find beyond a reasonable doubt that each of these elements of the crime has been committed. That where was an un — that there was an intentional act, an intentional lewd or lascivious act and that that act took place somewhere which was public as I define that. Where he had no expectations of privacy."

[10] The *Ferguson* opinion, see note 8, *supra,* while using the terms "intentional" and "reckless" also uses language evoking concepts of negligence,

sibility of giving offense, and by laying stress on the defend-
ant's expectation of privacy rather than on the risk of exposure,
or even on the expectation of secrecy, unfairly skewed the
charge against the defendant. A common definition of privacy,
contained in Webster's Third New Intl. Dictionary 1804
(1971), is "freedom from unauthorized oversight or observa-
tion."[11]

Even if the risk of exposure was insignificant, the defendant
could hardly urge that he expected to be free of *unauthorized*
observation in the home of his customer. Although the jury
may have considered another definition, e.g., see note 11,
*supra,* we do not know that this ordinary use of the word
"privacy" was not the one they had in mind.

In sum, taking the charge as a whole, we think that the
criterion of possibility, rather than probability, when coupled
with the repeated emphasis on privacy in the charge, may have

---

e.g., "reasonably foreseeable" and "unreasonable."

The Model Penal Code's definition of a similar offense, see note 6,
*supra,* requires that a defendant "know[ ]" that his lewd act is likely to be
observed." The comment, quoted above, *supra* at note 6, with its reference
to "reasonable" also suggests terminology applicable to negligence. It should
be noted, however, that the Code establishes requirements "considerably
more rigorous than simple negligence as usually treated in the law of torts.
See Wechsler, *Foreword, Symposium on the Model Penal Code,* Colum.
L. Rev. 589, 592 (1963)." Model Penal Code § 2.02, comment 4 at 243,
n.31 (Official Draft 1980).

Because of the elasticity of the term "public" as used by the authorities,
we recognize the difficulties which were faced by the trial judge in charging
the jury in this case. Whatever the degree of culpability required, however,
cf. *Commonwealth* v. *Jasmin,* 396 Mass. 653, 657 (1986), we think the
judicially imposed requirement that the crime be "public" for purposes of
G. L. c. 272, § 53, demands more that a "possibility" of giving offense to
persons present in a place where the defendant has no expectation of "pri-
vacy." Until the degree of culpability receives further clarification, judges,
in the interest of caution, would be well advised to charge that the offense
requires either that the defendant "intended public exposure or recklessly
disregarded a substantial risk of exposure to one or more persons." *Ferguson,*
384 Mass. at 16.

[11] The first definition of privacy in Webster's is divided into two parts:
(a) and (b). The definition in (a) is "the quality or state of being apart from
the company or observation of others." The definition in (b) is "isolation,
seclusion, or freedom from unauthorized oversight or observation." The
example given is: "protected by law in the enjoyment of" privacy.

resulted in a serious risk of a miscarriage of justice and that the defendant is entitled to a new trial.

*Judgment reversed.*

*Verdict set aside.*