## COMMONWEALTH *vs.* ROBERT L. NICHOLAS

No. 94-P-1469.

Essex. October 20, 1995. - April 3, 1996.

Present: JACOBS, LAURENCE, & FLANNERY, JJ.

*Unnatural and Lascivious Act. Lewdness. Statute,* Construction.

At the trial of a complaint alleging that the defendant committed an unnatural act in violation of G. L. c. 272, § 35, and that he was a lewd and lascivious person in violation of G. L. c. 272, § 53, the evidence did not warrant a finding that the defendant's sexual conduct occurred in public and his motion for required findings of not guilty should have been allowed. [255-258]

COMPLAINTS received and sworn to in the Newburyport Division of the District Court Department on June 3, 1992.

The cases were heard by *James J. O'Leary*, J.

*Wimberley Burton* for the defendant.

*Susanne G. Levsen*, Assistant District Attorney, for the Commonwealth.

JACOBS, J. After a bench trial in the District Court, the defendant was found guilty on a two-count complaint charging him with committing an unnatural act with another person and being a lewd and lascivious person.[1] These charges were brought pursuant to G. L. c. 272, § 35, and G. L. c. 272, § 53.[2] He appeals, claiming that the judge erred in denying his motion for required findings of not guilty. The only issue

---

[1]Concurrent sentences committing the defendant to a ninety-day confinement in a house of correction have been stayed pending this appeal.

[2]In pertinent part, G. L. c. 272, § 35, provides that: "Whoever commits any unnatural and lascivious act with another person shall be punished . . . ." General Laws c. 272, § 53, as amended through St. 1983, c. 66, § 1, provides that: "[L]ewd, wanton and lascivious persons in speech or behavior . . . may be punished . . . ." As we discuss *infra*, each of these statutes has been construed to require proof of public conduct.

before us is whether the evidence warranted a finding that the defendant's sexual conduct occurred in public.[3] We conclude that it did not and, therefore, reverse the convictions.

A State trooper, James Gilhooley, the sole witness at trial, testified essentially as follows: On June 2, 1992, about 8 P.M., he drove his cruiser into a large paved parking area adjacent to Route 95 in the town of Rowley. That area served as a truck weigh station but also was used as a rest stop by motorists and truckers. Signs on the highway signaled the upcoming weigh station and directed trucks to it. A sign indicated that the weigh station was closed at that time but there were no barriers to entry. There were no signs identifying the parking area as a rest stop. The paved lot was bordered on three sides by fairly thick woods containing "numerous beaten paths that go deep into the woods." There were no bathrooms, lights, telephones, picnic tables, or other buildings in the area.

Gilhooley stated he was patrolling that location "[b]ecause of the large concentration of males . . . who abandon their motor vehicles and congregate in the wooded areas." At that time, traffic on Route 95 was medium to light. Gilhooley testified that travelers who used the parking area as a rest stop and sought to relieve themselves, "would go into the woodlands area outside the parking lot."

When Gilhooley drove into the paved area, he noticed a truck and a Mercedes automobile, both unoccupied. Soon, two men emerged from the woods, one entered the truck and drove off, the other remained inside the parked Mercedes. Shortly thereafter, the defendant drove into the paved area, stopped about a hundred yards from the Mercedes and remained in his vehicle. Gilhooley then drove away, circled around and returned about 8:20 P.M. Noticing that the Mercedes and the defendant's vehicle were unoccupied, he "took a path that was in sort of the center of the two motor vehicles and followed that in." Dusk then was approaching, but it was still light. At a point about one hundred feet from the parking area he observed the defendant and the other man engaged

---

[3]The defendant does not claim that his conduct was other than consensual, see *Commonwealth* v. *Ferguson*, 384 Mass. 13, 15 (1981), nor was it disputed at trial or before us that persons observing that conduct would be affronted or alarmed. See *Commonwealth* v. *Sefranka*, 382 Mass. 108, 117-118 (1980); *Commonwealth* v. *Gray*, post 901 (1996); Model Penal Code § 251.1, comment 2 (1980).

in what trial counsel stipulated was an unnatural sexual act.[4] From that point in the woods, Gilhooley could see neither the parking area nor the adjacent highway. There was no evidence that any other person was in the area at the time.

While neither of the statutes upon which the defendant's convictions are based uses the word "public," each has been construed to require proof of the public nature of the conduct in question. *Commonwealth* v. *Scagliotti*, 373 Mass. 626, 628 (1977) (G. L. c. 272, § 35). *Commonwealth* v. *Sefranka*, 382 Mass. 108, 117 (1980) (G. L. c. 272, § 53). The reported cases may be read as establishing that "[t]he essential query is whether the defendant intended public exposure or recklessly disregarded a substantial risk of exposure to one or more persons . . . . The Commonwealth must prove that the likelihood of being observed by casual passersby must have been reasonably foreseeable to the defendant, or stated otherwise, that the defendant acted upon an unreasonable expectation that his conduct would remain secret." *Commonwealth* v. *Ferguson*, 384 Mass. 13, 16 (1981) (applying G. L. c. 272, § 35). See *Commonwealth* v. *Kelley*, 25 Mass. App. Ct. 180, 183-184 & n.4 (1987) (adopting the *Ferguson* standard in a case under G. L. c. 272, § 53, and noting that there is no reason to treat §§ 35 and 53 differently for purposes of defining the word "public"); *Commonwealth* v. *Beauchemin*, 410 Mass. 181, 183-184 (1991) (describing §§ 35 and 53 as "closely related").

Arguably, proof of likely observation by a casual passerby sufficient to withstand a motion for a required finding of not guilty is enhanced by evidence that the proscribed conduct occurred in an unenclosed outdoor area frequented by the public.[5] Notwithstanding such enhancement, fundamental requirements of criminal proof must be met. The Com-

---

[4]The other man was a codefendant in the trial and was convicted of the same crimes as the defendant. He did not appeal.

[5]Most of the reported cases dealing with the public aspect element of G. L. c. 272, §§ 35 and 53, involve conduct occurring in an enclosure. See *Commonwealth* v. *Scagliotti*, 373 Mass. at 627 (cubical in theater); *Commonwealth* v. *Templeman*, 376 Mass. 533, 534, 537 (1978) (private home); *Commonwealth* v. *Ferguson*, 384 Mass. at 16-17 (parked car); *Commonwealth* v. *Beauchemin*, 410 Mass. at 184 (parked car and faculty lounge); *Commonwealth* v. *Reilly*, 5 Mass. App. Ct. 435, 436, 437 n.2 (1977) (parked car); *Commonwealth* v. *Kelley*, 25 Mass. App. Ct. at 181-182 (private home).

monwealth's best case may not rely upon inference piled upon inference. *Commonwealth* v. *Ferguson, supra* at 18. Here, evidence of moderate use of the nearby highway may have permitted an inference that some travelers may have decided to use the weigh station as a rest stop at approximately the time the defendant occupied the nearby woods. Notably lacking, however, was any evidence that travelers utilized that part of the woods in which the defendant was found. Therefore, a further conclusion that some persons were likely to venture into that area relied on conjecture rather than reason. Even if the presence of travelers in that general area were inferable, there was no evidence that the defendant would have been visible from the vantage point likely to be occupied by them. The existence of a path in that general vicinity did not establish use at the time that the defendant was observed. A fact finder necessarily would have to employ impermissible speculation to conclude that the defendant chose a place for his sexual conduct where the likelihood of his being observed was reasonably foreseeable. The evidence was not such as is reasonably susceptible of conflicting interpretations, one of which establishes the Commonwealth's case beyond a reasonable doubt and thus requires submission to the fact finder. Contrast *Commonwealth* v. *Scagliotti*, 373 Mass. at 629; *Commonwealth* v. *Kelley*, 25 Mass. App. Ct. at 185. Accordingly, it was error to deny the defendant's motion for required findings of not guilty.

> *Judgments reversed.*
>
> *Verdicts set aside.*
>
> *Judgments for the defendant.*