## Commonwealth *vs.* Robert Nebel.

No. 02-P-405.

Bristol. May 19, 2003. - September 17, 2003.

Present: Porada, Laurence, & Kantrowitz, JJ.

*Unnatural and Lascivious Act. Lewdness. Child Abandonment.*

At the trial of a criminal complaint alleging that the defendant committed a lewd, wanton and lascivious act in violation of G. L. c. 272, § 53, the evidence warranted a finding that the defendant's sexual conduct occurred in public. [318-320]

At the trial of a criminal complaint alleging that the defendant abandoned his three and one-half year old child in violation of G. L. c. 119, § 39, evidence that the defendant left his child for an undetermined period of time, traveling a relatively short distance away and giving no indication that he did not have the intention to return shortly, could not have formed the basis for a criminal conviction of abandonment. [320-322]

Complaint received and sworn to in the Attleboro Division of the District Court Department on November 1, 2000.

The case was tried before *Gregory L. Phillips*, J.

*Suzanne Dwyer-Jones* for the defendant.

*Adam T. Narris*, Assistant District Attorney, for the Commonwealth.

Kantrowitz, J. The defendant, Robert Nebel, was convicted of lewd, wanton and lascivious conduct, G. L. c. 272, § 53, and abandonment of an infant under age of ten, G. L. c. 119, § 39.[1] Basically, the case boils down to two issues[2]: (1) Was the

---

[1]The jury also returned verdicts of not guilty of open and gross lewdness G. L. c. 272, § 16, and disorderly conduct, G. L. c. 272, § 53.

[2]The defendant raised the following issues: (a) the Commonwealth failed to introduce evidence that the act was public in nature or done to offend other people; (b) the Commonwealth failed to introduce any evidence that the defendant abandoned an infant under ten; (c) the criminal abandonment statute is void for vagueness; and (d) the judge's charge to the jury on the definition of abandonment was reversible error.

defendant's sex act public in nature? and (2) Did the defendant's actions, in leaving his three and one-half year old child in an unattended car, support a conviction of child abandonment? We affirm the former conviction and reverse the latter.

*Facts.* On October 24, 2000, at approximately 5:00 P.M., Trooper James O'Leary was on patrol and checking on the well being of travelers in a rest area off Route 95 in North Attleboro, as is required by State police policy. O'Leary observed several unoccupied cars parked at the rest stop. The rest stop did not have any restrooms. As the trooper was parking his vehicle, he observed a boy run toward a path and urinate in some nearby bushes.

The rest area was surrounded on three sides by thin woods and bushes; the fourth side of the rest area was the highway. There was more than one path leading into the woods. The path at issue in this case was off the paved parking lot and down a grassy hill. It was a well worn dirt and rock path, with no vegetation growing on it.

O'Leary walked up the paved parking area, down a grassy hill and entered the path by the bushes and trees. He walked about forty to fifty feet up a hill, to a large hole in the first fence. At that fence, he passed a male going in the opposite direction. O'Leary confronted the man and asked what he was doing there. The man told him he had been in there urinating. O'Leary testified that he responded, " 'I really don't think you were in there urinating.' [The man] said, 'yes I was, but there's other males,' and he motioned over his shoulder, 'doing other things back there.' "

O'Leary walked another forty feet from the fence through another large opening in a second fence, to the top of the hill. Looking down the other side of the hill, O'Leary had a clear view of the defendant and two other men at a distance of forty to fifty feet away. The defendant was masturbating, while the two other males, "in very close proximity to him," were watching.[3]

---

[3]The defendant testified that he and his daughter were driving to Connecticut, their former home, from Waltham, for a play date for the child. There was very heavy traffic, and, after nearly two hours, he had to urgently

O'Leary confronted the trio[4] and instructed them to walk back down the path. At the defendant's car, O'Leary saw, through the front windshield, the defendant's three and one-half year old child, alone and asleep. After securing identification from the two other men, he let them leave. The defendant, conversely, was informed that he was facing several charges and that the trooper was going to call the defendant's wife, which he did.

O'Leary chose not to arrest the defendant at that time because he wanted to avoid disturbing the child. The Department of Social Services (DSS) was contacted and an investigation ensued, resulting in the defendant being admonished about his lapse of judgment in leaving his daughter. The DSS case was then closed.

*Lewd, lascivious and wanton behavior.* General Laws c. 272, § 53, contains a laundry list of prohibited acts, including "lewd, wanton and lascivious . . . behavior." Model Jury Instruction 5.422 (1995), which the judge appropriately read to the jury (making some minor changes as the facts dictated), puts meat on the bare bones of the statute:

> "In order to prove the defendant guilty of this offense, the Commonwealth must prove four things beyond a reasonable doubt:
>
> "*First*: That the defendant (committed) (publicly solicited another person to commit) a sexual act;
>
> "*Second*: That the sexual act involved touching the genitals or buttocks, or the female breasts;

---

urinate. He stated, and his wife testified in corroboration, that he required privacy while urinating. Accordingly, he went down the path to the first place where it looked private. He left his daughter in the car because she was sleeping and he could not wake her up (apparently a common occurrence). Due to his need to concentrate, he closed his eyes and did not notice the men standing around him until he had finished.

[4]James Kostka testified, for the defendant, that he was taking a leisurely walk on the paths and came upon the defendant, who had his penis in his hand and his pants at his thighs. Another man was standing there. He did not see the defendant urinating or masturbating. It struck him as odd, so he paused, but was continuing on when he heard O'Leary tell him to stop.

> "*Third*: That the defendant did this either for the purpose of sexual arousal or gratification, or for the purpose of offending other people; and
>
> "*Fourth*: That the sexual act (was) (was to be) committed in a public place; that is, a place where the defendant either intended public exposure, or recklessly disregarded a substantial risk of public exposure at that time and under those circumstances, to others who might be offended by such conduct."

Here, the first three elements were easily met. The defendant (1) committed a sexual act (2) involving the touching of his genitals (3) for the purpose of sexual arousal or gratification.[5] The key issue is the fourth element — the public nature of the act. Case law has established that

> "[t]he essential query is whether the defendant intended public exposure or recklessly disregarded a substantial risk of exposure to one or more persons . . . . The Commonwealth must prove that the likelihood of being observed by casual passersby must have been reasonably foreseeable to the defendant, or stated otherwise, that the defendant acted upon an unreasonable expectation that his conduct would remain secret." *Commonwealth* v. *Nicholas*, 40 Mass. App. Ct. 255, 257 (1996) (citations omitted).

The Commonwealth met its burden. The path was off the rest area which, while open to the public, had no bathrooms. It was, thus, foreseeable that travelers would relieve themselves in the nearby area, an occurrence to which the trooper testified. The path was well worn and without vegetation, a sure sign of use. The defendant was readily visible and was, in fact, observed nearly simultaneously by four unrelated individuals, including Trooper O'Leary.

*Nicholas* does not compel a different result. In that case, the path followed by the officer began at a closed truck weigh station. No one, other than the officer, saw Nicholas and another man engaged in a sex act approximately one hundred feet into

---

[5]The defendant's argument that there was no proof that anyone was offended, citing this element, falls short. The element is written in the alternative. The Commonwealth was required to prove either sexual gratification/arousal *or* public offense.

the woods. There was no evidence that travelers utilized that area or that the defendant would have been visible to them.

In the case at bar, unlike in *Nicholas*, the evidence would not require a fact finder "to employ impermissible speculation to conclude that the defendant chose a place for his sexual conduct where the likelihood of his being observed was reasonably foreseeable." *Id.* at 258. The defendant's motion for a required finding was properly denied.[6]

*Abandonment.* General Laws c. 119, § 39, provides, in relevant part, that: "Whoever abandons an infant under the age of ten within or without any building . . . shall be punished . . . ." G. L. c. 119, § 39. The term "abandons" is not defined.

The defendant challenges his conviction on this count on three grounds: (1) that the statute was void for vagueness[7]; (2) that the judge improperly instructed the jury; and (3) that the evidence was insufficient for a conviction.

The judge, utilizing a definition in Black's Law Dictionary, (6th ed. 1990), told the jury, in relevant part, "I note, and for the record, define for you under Black's Law Dictionary, the term abandonment as, desertion or willful forsaking, forgoing parental duties."

This definition was inadequate. Black's Law Dictionary (7th ed. 1999), defines abandonment, in part, as "[t]he act of leaving a spouse or child willfully and without an intent to return." Under G. L. c. 210, § 3, dealing with termination of parental rights, the term has been further honed to mean

"being left without any provision for support, and without any person responsible to maintain care, custody and control because the whereabouts of the person responsible

---

[6]Even if we were to consider the two men observing the defendant as noncriminal participants to a criminal act, there would still be sufficient evidence to establish the public nature of the act in the form of its location and the observations of the trooper and the single male who was leaving the area.

[7]"A void for vagueness challenge is a facial challenge that must be raised in a pretrial motion to dismiss." *Commonwealth* v. *Moses*, 436 Mass. 598, 605 n.4 (2002) (citations omitted). When an issue is not properly preserved, we usually review only for substantial likelihood of miscarriage of justice. See *Commonwealth* v. *Moses*, *supra* at 605. As we are reversing the conviction on another ground, we need not address this issue.

is unknown and reasonable efforts to locate such person have been unsuccessful. A brief and temporary absence from the home, without the intent to abandon the child, shall not constitute abandonment."

Regardless of the definition utilized, the absence, at a minimum, must be more than brief and temporary.[8] Under the definition used by the judge, and urged upon us by the Commonwealth, anyone using the rest area for the purpose of going to the bathroom, and leaving the child unattended in a motor vehicle, would be guilty of abandonment. So too would a parent who leaves a child unattended in a car while he or she runs into a post office to mail a letter.

If this activity, albeit ill-advised, were meant to be criminalized, the Legislature could have written a more extensive child endangerment statute.[9] Compare 720 Ill. Comp. Stat. Ann. 5/12-21.6 (b) (West 2002) ("There is a rebuttable presumption that a person committed the offense [endangering the life or health of a child] if he or she left a child 6 years of age or younger unattended in a motor vehicle for more than 10 minutes"). That the actions of the defendant were foolish and a lapse of judgment, as DSS observed, is self-evident. To equate abandonment with poor judgment, however, is a leap we are not prepared to take. The defendant left his daughter for an undetermined amount of time, traveling a relatively short distance away. There was no indication that he did not have the intention to return shortly; indeed the evidence was to the contrary.[10] This cannot form the

[8]To require, on the other hand, the Commonwealth to prove a permanent intent never to return would place a burden so high as to be nearly unattainable.

[9]The current law, G. L. c. 265, § 13L, reads as follows: "Whoever wantonly or recklessly engages in conduct that creates a substantial risk of serious bodily injury or sexual abuse to a child or wantonly or recklessly fails to take reasonable steps to alleviate such risk where there is a duty to act shall be punished . . . ."

[10]There being no objection, the trooper was allowed to answer the following questions:

Q. "It would seem likely that he intended to return to his car?"

A. "Oh, yes."

Q. "And to his daughter?"

A. "Oh, yes."

basis for a criminal conviction of abandonment.

The lewd, wanton and lascivious conduct conviction is affirmed. The abandonment of an infant under the age of ten conviction is reversed.

*So ordered.*