## COMMONWEALTH *vs.* DOUGLAS MORRILL, THIRD.

No. 05-P-823.

Essex. September 13, 2006. - May 1, 2007.

Present: RAPOZA, C.J., GELINAS, & GRAINGER, JJ.

*Unnatural and Lascivious Act. Practice, Criminal,* Instructions to jury. *Words,* "Public place."

At the trial of indictments charging the defendant with twice committing an unnatural and lascivious act with another person, in violation of G. L. c. 272, § 35, the evidence was sufficient to show that the sexual acts were committed in a public place, in that at the time of the acts, the defendant recklessly disregarded a substantial risk of disclosure to others, where one incident occurred in a court house holding cell, a high traffic area adjacent to two court rooms and monitored by a video camera, and where the other incident occurred in a hallway in the court house basement, an open passageway in a public building through which it was reasonably foreseeable that employees could walk. [813-816]

At the trial of indictments charging the defendant with twice committing an unnatural and lascivious act with another person, in violation of G. L. c. 272, § 35, the judge's instruction to the jury defining privacy did not require the jury to conclude that the defendant had eliminated all possibility of being observed, but properly put the burden on the Commonwealth to demonstrate that he had failed to take reasonable measures to eliminate that possibility [816-817]; further, the judge's use of the "moral certainty" language in the reasonable doubt instruction was correct and did not prejudice the defendant [817-818].

INDICTMENTS found and returned in the Superior Court Department on January 14, 2004.

The cases were tried before *S. Jane Haggerty*, J.

*Richard N. Foley* for the defendant.

*Kenneth E. Steinfield*, Assistant District Attorney, for the Commonwealth.

RAPOZA, C.J. The defendant, Douglas Morrill, III, appeals from convictions of twice violating G. L. c. 272, § 35 (committing an unnatural and lascivious act with another person). He

argues that the trial judge erred in denying his motion for a required finding of not guilty, claiming there was insufficient evidence to support a finding that the acts occurred in public. The defendant also asserts that the jury instructions were erroneous because (1) the judge improperly defined "public place," and (2) the inclusion of the "moral certainty" component of the reasonable doubt instruction confused the jury and compelled them to convict based on moral outrage. There was no error and we affirm.

1. *Background.* Considered in the light most favorable to the Commonwealth, the pertinent facts are these. The defendant was employed as a court officer at the Newburyport District Court House, where he was in charge of the custody of a twenty-year old female prisoner. She asked the defendant for a cigarette, noting that she would "do just about anything for one." Thereafter, the prisoner twice performed sexual acts on the defendant in exchange for cigarettes. Both events occurred in the court house during the lunch hour on a regular business day. The first instance was in a holding cell on the second floor of the court house in an area viewable by video monitor. The holding cell was adjacent to two court rooms and adjoining judges' lobbies and was in an area frequented by court staff. Notably, the first incident was witnessed on the monitor by a court administrator (who was checking the second-floor holding cells for a different inmate). The second act occurred in the basement of the court house, in the hallway outside another holding cell. This area was not monitored by video, although it was next to other holding cells and was located in a work area used by court officers and accessible to court staff.

2. *Public place.* "A consensual unnatural act must be committed in a public place in order to be punishable under G. L. c. 272, § 35." *Commonwealth* v. *Scagliotti*, 373 Mass. 626, 628 (1977). Although the statute does not use the word "public," it has been construed to require proof of the public nature of the conduct in question. *Ibid.* "The rationale of [the statute] is to prevent the open flouting of community standards regarding sexual matters," *Commonwealth* v. *Ferguson*, 384 Mass. 13, 16 (1981), and to preclude the possibility that a defendant's conduct might give offense to persons present in a place frequented by

members of the public. *Commonwealth* v. *Scagliotti, supra* at 628. "A place may be public at some times and under some circumstances, and not public at others."[1] *Commonwealth* v. *Ferguson, supra* at 16.

The essential query to determine whether a place is public for the purposes of G. L. c. 272, § 35, is "whether the defendant intended public exposure or recklessly disregarded a substantial risk of exposure to one or more persons." *Commonwealth* v. *Ferguson, supra.* "Conduct is not established as public merely because another person actually observes the conduct." *Ibid.* Indeed, "the statute is not designed to punish persons who desire privacy and who take reasonable measures to ensure it." *Ibid.* "The Commonwealth must prove that the likelihood of being observed by casual passersby must have been reasonably foreseeable to the defendant, or stated otherwise, that the defendant acted upon an unreasonable expectation that his conduct would remain secret." *Ibid.*

The defendant asserts that there was insufficient evidence to support a finding that the acts in question occurred in public. We disagree. The second-floor holding cell and the basement hallway were both public places for the purposes of G. L. c. 272, § 35, where there was sufficient evidence that at the time of the sexual acts, the defendant recklessly disregarded a substantial risk of disclosure to others. *Commonwealth* v. *Ferguson, supra* at 16.

a. *Second-floor holding cell.* As to the incident in the second-floor holding cell, it was not reasonable for the defendant to expect that his conduct would remain private considering that the holding cell was adjacent to two court rooms — a location that the evidence at trial confirmed to be a high traffic area that included at least two judges' lobbies, an administrator's office, a secretarial office, a conference room, and a photocopier. The doors to the cell area always remained unlocked and the vicinity was accessible to various court staff, including probation officers, maintenance workers, and court officers. The Com-

---

[1]The statute does not, however, require proof that the location be accessible to members of the general public. Acts are committed in a public place when they occur in an area likely to be entered or observed by persons other than the perpetrators, even though the location is not open to the general public.

monwealth amply demonstrated that it was foreseeable to the defendant that court personnel would utilize this area and that there was a real prospect that his acts would be observed by a passerby. Cf. *Commonwealth* v. *Guy G.*, 53 Mass. App. Ct. 271, 275 (2001) (study room cubicle in a high school is public where the defendant testified that " 'teachers . . . come in every now and then and check [up]' and it was 'not uncommon for . . . someone [to] come[] in to see what you were doing' "); *Commonwealth* v. *Nebel*, 59 Mass. App. Ct. 316, 319 (2003) (well-worn path on a highway rest area is public because it was foreseeable that it would be used by travelers).

The likelihood of detection was increased by the fact that the holding cell on the second floor was monitored by a video camera and because the defendant allowed the prisoner to smoke a cigarette, in a building where it was prohibited, before the performance of the sexual act.[2] Not surprisingly, a court administrator witnessed the sexual act when she was in the area to check the second-floor holding cell monitor for a different inmate. Moreover, she also smelled the cigarette smoke. It cannot be said that the defendant took reasonable measures to remain undetected and to ensure privacy in the circumstances.

Moreover, the defendant realized that his actions were likely to attract attention given the prisoner's status. For example, he terminated the sexual activity in the second-floor holding cell after only five minutes because, according to the prisoner, the defendant stated that he "was worried about people thinking that [they] had been upstairs for a while" and that "we have to go downstairs because they are going to wonder where we are." The defendant's subjective belief that they were in jeopardy of getting caught is further evidence that it was reasonably likely that they could be detected in the circumstances.

b. *The court house basement.* The court house basement, albeit a closer case, also qualifies as a public place. It was not reasonable for the defendant to expect privacy in an open hallway in a public building, especially where the evidence demonstrated that the hallway was accessible to other court personnel. Specifically,

---

[2]The defendant informed the prisoner that the camera was not working even though it was functioning during the incident. Duping the prisoner into believing the camera was broken is not a reasonable measure to ensure privacy.

twenty-five other court employees, including court officers, probation officers, maintenance workers, and other security staff had keys permitting access to the basement holding cell area. As a result, the jury were not required to "employ impermissible speculation to conclude that the defendant chose a place for his sexual conduct where the likelihood of his being observed was reasonably foreseeable." *Commonwealth* v. *Nichols*, 40 Mass. App. Ct. 255, 258 (1996).

Unlike in *Commonwealth* v. *Ferguson*, 384 Mass. at 18, where the jury could only speculate that the parking lot in question was regularly traveled, the jury here did not need to resort to conjecture to conclude that the basement area was frequented by court staff. Indeed, the evidence demonstrated that just prior to the incident, court officers escorted five or six prisoners from the area. Moreover, with respect to the downstairs location, the evidence showed that (1) probation officers come and talk to prisoners while they are in the cells; (2) court officers shepherd prisoners back and forth throughout the day from the cells to the court rooms upstairs; and (3) prisoners eat lunch in the cells.[3] The basement hallway was not desolate or remote, but was an open passageway in a public building through which it was reasonably foreseeable employees could walk. Contrast *Commonwealth* v. *Beauchemin*, 410 Mass. 181, 184 (1991), quoting from *Commonwealth* v. *Ferguson*, 384 Mass. at 16 (faculty lounge at a school during a weekend debate competition and a supermarket parking lot during a snow storm not public because "there was little 'likelihood . . . [that they would be] observed by a casual passerby' "); *Commonwealth* v. *Nicholas*, *supra* at 257-258 (wooded area 100 feet from a closed weigh station on a highway not public because there was no evidence that travelers utilized the area).

3. *Jury instructions.* a. *Definition of public place.* The defendant contends that the judge's instruction on the definition of a public place was erroneous, claiming that it required the jury to convict the defendant unless he could prove his actions were

---

[3]We are not persuaded, in the circumstances, by the defendant's assertion that the location was not public owing to the fact that the events occurred at lunchtime.

not, in fact, detected. The trial judge instructed the jury that

"The defendant cannot be found guilty of this charge under this theory if he desired privacy for a sexual act with another consenting adult and *took reasonable measures in order to secure that privacy.* The Commonwealth must prove that the likelihood of being observed by a casual passerby must have been reasonably foreseeable to the defendant. Stated otherwise, the Commonwealth must prove that the defendant acted upon an unreasonable expectation that his conduct would remain secret or private.

"Privacy in this sense means removal from public view and elimination of the possibility that the defendant's conduct might give offense to persons present in a place frequented by members of the public for reasons of business, entertainment, or the like. Whether a location is public is a question of fact for you to resolve."

(Emphasis supplied.) The trial judge's instructions were proper.

In defining privacy,[4] the trial judge simply defined what it is that the defendant must take reasonable measures to ensure. Contrary to the defendant's assertions, the instruction did not require that the jury conclude that he had eliminated all possibility of being observed. Rather, the Commonwealth was put to the burden of demonstrating that the defendant failed to take *reasonable measures* to eliminate that possibility. If the defendant's interpretation of the instructions were correct, the jury should have acquitted him for the basement incident, which was not observed by anyone, from which the jury would necessarily have concluded that he had eliminated the possibility of detection.

b. *Moral certainty.* The trial judge's use of the "moral certainty" language in the reasonable doubt instruction was correct and did not prejudice the defendant. Moral certainty language is acceptable "if it is linked with language that lends content to the phrase." *Commonwealth* v. *Silanskas,* 433 Mass. 678, 703-704 (2001), quoting from *Commonwealth* v. *Webster,* 5 Cush. 295, 345 (1850). Here, the trial judge provided the

---

[4]This definition of privacy is taken verbatim from *Commonwealth* v. *Scagliotti,* 373 Mass. at 628.

necessary linkage to lend content to the phrase by explaining that moral certainty is "certainty that convinces your understanding and satisfies your reason and judgment as jurors who are sworn to act conscientiously on the evidence."

The defendant's contention that the moral certainty language triggered the jury to convict because they were morally outraged by the lewd behavior by a court officer has no merit. Moral certainty as to a matter of proof and moral outrage as to committed acts are clearly different concepts, not subject to confusion despite the defendant's attempt to suggest otherwise. Moreover, nothing in the record indicates that the jury were confused by the moral certainty instruction given that they acquitted the defendant of the more serious, and ostensibly more morally outrageous, charge of indecent assault and battery.

*Judgments affirmed.*